# BURKS v. UNITED STATES

No. 76–6528.   Argued November 28, 1977—Decided June 14, 1978

BURGER, C. J., delivered the opinion of the Court, in which all other Members joined except BLACKMUN, J., who took no part in the consideration or decision of the case.

*Bart C. Durham III* argued the cause and filed briefs for petitioner.

*Frank H. Easterbrook* argued the cause for the United States *pro hac vice.* With him on the brief were *Acting Solicitor General Friedman, Assistant Attorney General Civiletti,* and *Michael W. Farrell.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to resolve the question of whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict.

## I

Petitioner Burks was tried in the United States District Court for the crime of robbing a federally insured bank by use of a dangerous weapon, a violation of 18 U. S. C. § 2113 (d) (1976 ed.). Burks' principal defense was insanity. To prove this

claim petitioner produced three expert witnesses who testified, albeit with differing diagnoses of his mental condition, that he suffered from a mental illness at the time of the robbery, which rendered him substantially incapable of conforming his conduct to the requirements of the law.   In rebuttal the Government offered the testimony of two experts, one of whom testified that although petitioner possessed a character disorder, he was not mentally ill.   The other prosecution witness acknowledged a character disorder in petitioner, but gave a rather ambiguous answer to the question of whether Burks had been capable of conforming his conduct to the law.   Lay witnesses also testified for the Government, expressing their opinion that petitioner appeared to be capable of normal functioning and was sane at the time of the alleged offense.

Before the case was submitted to the jury, the court denied a motion for a judgment of acquittal.   The jury found Burks guilty as charged.   Thereafter, he filed a timely motion for a new trial, maintaining, among other things, that "[t]he evidence was insufficient to support the verdict."   The motion was denied by the District Court, which concluded that petitioner's challenge to the sufficiency of the evidence was "utterly without merit." [1]

On appeal petitioner narrowed the issues by admitting the affirmative factual elements of the charge against him, leaving only his claim concerning criminal responsibility to be resolved. With respect to this point, the Court of Appeals agreed with petitioner's claim that the evidence was insufficient to support the verdict and reversed his conviction.   547 F. 2d 968 (CA6 1976).   The court began by noting that "the government has the burden of proving sanity [beyond a reasonable doubt] once a prima facie defense of insanity has been raised." [2]   *Id.,*

---

[1] Petitioner did not file a post-trial motion for judgment of acquittal, which he was entitled to do under Fed. Rule Crim. Proc. 29 (c).

[2] Although the Court of Appeals did not cite *Davis* v. *United States,* 160 U. S. 469 (1895), that decision would require this allocation of burdens.

at 969. Petitioner had met his obligation, the court indicated, by presenting "the specific testimony of three experts with unchallenged credentials." *Id.,* at 970. But the reviewing court went on to hold that the United States had not fulfilled its burden since the prosecution's evidence with respect to Burks' mental condition, even when viewed in the light most favorable to the Government, did not "effectively rebu[t]" petitioner's proof with respect to insanity and criminal responsibility. *Ibid.* In particular, the witnesses presented by the prosecution failed to "express definite opinions on the precise questions which this Court has identified as critical in cases involving the issue of sanity." *Ibid.*

At this point, the Court of Appeals, rather than terminating the case against petitioner, remanded to the District Court "for a determination of whether a directed verdict of acquittal should be entered or a new trial ordered." *Ibid.* Indicating that the District Court should choose the appropriate course "from a balancing of the equities," *ibid.,* the court explicitly adopted the procedures utilized by the Fifth Circuit in *United States* v. *Bass,* 490 F. 2d 846, 852–853 (1974), "as a guide" to be used on remand:

> "[W]e reverse and remand the case to the district court where the defendant will be entitled to a directed verdict of acquittal unless the government presents sufficient additional evidence to carry its burden on the issue of defendant's sanity. As we noted earlier, the question of sufficiency of the evidence to make an issue for the jury on the defense of insanity is a question of law to be decided by the trial judge. . . . If the district court, sitting without the presence of the jury, is satisfied by the government's presentation, it may order a new trial. . . . Even if the government presents additional evidence, the district judge may refuse to order a new trial if he finds from the record that the prosecution had the opportunity fully to develop its case or in fact did so at the first trial."

The Court of Appeals assumed it had the power to order this "balancing" remedy by virtue of the fact that Burks had explicitly requested a new trial. As authority for this holding the court cited, *inter alia,* 28 U. S. C. § 2106,[3] and *Bryan* v. *United States,* 338 U. S. 552 (1950). 547 F. 2d, at 970.

## II

The United States has not cross-petitioned for certiorari on the question of whether the Court of Appeals was correct in holding that the Government had failed to meet its burden of proof with respect to the claim of insanity. Accordingly, that issue is not open for review here. Given this posture, we are squarely presented with the question of whether a defendant may be tried a second time when a reviewing court has determined that in a prior trial the evidence was insufficient to sustain the verdict of the jury.[4]

Petitioner's argument is straightforward. He contends that the Court of Appeals' holding was nothing more or less than a decision that the District Court had erred by not granting his motion for a judgment of acquittal. By implication, he argues, the appellate reversal was the operative equivalent of a district court's judgment of acquittal, entered either before or after verdict. Petitioner points out, however, that had the District Court found the evidence at the first trial inadequate, as the Court of Appeals said it should have done, a second trial would violate the Double Jeopardy Clause of the

---

[3] Title 28 U. S. C. § 2106 provides:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

[4] There is no claim in this case that the trial court committed error by excluding prosecution evidence which, if received, would have rebutted any claim of evidentiary insufficiency.

Fifth Amendment. Therefore, he maintains, it makes no difference that the determination of evidentiary insufficiency was made by a *reviewing* court since the double jeopardy considerations are the same, regardless of which court decides that a judgment of acquittal is in order.

The position advanced by petitioner has not been embraced by our prior holdings. Indeed, as the Court of Appeals here recognized, *Bryan* v. *United States, supra,* would appear to be contrary. In *Bryan* the defendant was convicted in the District Court for evasion of federal income tax laws. Bryan had moved for a judgment of acquittal both at the close of the Government's case and when all of the evidence had been presented. After the verdict was returned he renewed these motions, but asked—in the alternative—for a new trial. These motions were all denied. The Court of Appeals reversed the conviction on the specific ground that the evidence was insufficient to sustain the verdict and remanded the case for a new trial. Certiorari was then granted to determine whether the Court of Appeals had properly ordered a new trial, or whether it should have entered a judgment of acquittal. In affirming the Court of Appeals, this Court decided, first, that the Court of Appeals had statutory authority, under 28 U. S. C. § 2106, to direct a new trial. But Bryan had also maintained that notwithstanding § 2106 a retrial was prohibited by the Double Jeopardy Clause, a contention which was dismissed in one paragraph:

> "Petitioner's contention that to require him to stand trial again would be to place him twice in jeopardy is not persuasive. He sought and obtained the reversal of his conviction, assigning a number of alleged errors on appeal, including denial of his motion for judgment of acquittal. '. . . [W]here the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial.' *Francis* v. *Resweber,* 329 U. S. 459, 462. See *Trono* v. *United States,* 199 U. S. 521, 533–534." 338 U. S., at 560.

Five years after *Bryan* was decided, a similar claim of·double jeopardy was presented to the Court in *Sapir* v. *United States,* 348 U. S. 373 (1955). Sapir had been convicted of conspiracy by a jury in the District Court. After the trial court denied a motion for acquittal, he obtained a reversal in the Court of Appeals, which held that the motion should have been granted since the evidence was insufficient to sustain a conviction. In a brief *per curiam* opinion, this Court, without explanation, reversed the Court of Appeals' decision to remand the petitioner's case for a new trial.

Concurring in the *Sapir* judgment, which directed the dismissal of the indictment, Mr. Justice Douglas indicated his basis for reversal:

> "The correct rule was stated in *Kepner* v. *United States,* 195 U. S. 100, at 130, 'It is, then, the settled law of this court that former jeopardy includes one who has been acquitted by a verdict duly rendered . . . .' If the jury had acquitted, there plainly would be double jeopardy to give the Government another go at this citizen. If, as in the *Kepner* case, the trial judge had rendered a verdict of acquittal, the guarantee against double jeopardy would prevent a new trial of the old offense. I see no difference when the appellate court orders a judgment of acquittal for lack of evidence." *Id.,* at 374.

Up to this point, Mr. Justice Douglas' explication is, of course, precisely that urged on us by petitioner, and presumably would have been applicable to *Bryan* as well. But the concurrence in *Sapir* then undertook to distinguish *Bryan:*

> "If petitioner [Sapir] *had asked for a new trial,* different considerations would come into play, *for then the defendant opens the whole record for such disposition as might be just.* See *Bryan* v. *United States,* 338 U. S. 552." 348 U. S., at 374. (Emphasis added.)

Shortly after *Sapir,* in *Yates* v. *United States,* 354 U. S. 298 (1957), the Court adopted much the same reasoning as that employed by the *Sapir* concurrence. In *Yates,* this Court—without citing *Sapir*—ordered acquittals for some defendants in the case, but new trials for others, when one of the main contentions of the petitioners concerned the insufficiency of the evidence. As an explanation for the differing remedies, the Court stated:

> "We think we may do this by drawing on our power under 28 U. S. C. § 2106, because under that statute we would no doubt be justified in refusing to order acquittal even where the evidence might be deemed palpably insufficient, particularly *since petitioners have asked in the alternative for a new trial* as well as for acquittal. See *Bryan* v. *United States,* 338 U. S. 552." 354 U. S., at 328.

The *Yates* decision thus paralleled *Sapir*'s concurrence in the sense that both would allow a new trial to correct evidentiary insufficiency if the defendant had requested such relief—even as an alternative to a motion for acquittal. But the language in *Yates* was also susceptible of a broader reading, namely, that appellate courts have full authority to order a new trial as a remedy for evidentiary insufficiency, even when the defendant has moved only for a judgment of acquittal.

Three years later in *Forman* v. *United States,* 361 U. S. 416 (1960), the Court again treated these questions. There a conviction was reversed by the Court of Appeals due to an improper instruction to the jury, *i. e.,* trial error, as opposed to evidentiary insufficiency. Although the petitioner in *Forman* had moved both for a new trial and judgment of acquittal, he argued that a new trial would not be appropriate relief since he had requested a judgment of acquittal with respect to the specific trial error on which this Court agreed with the Court of Appeals. Without distinguishing between a reversal due to trial error and reversal resulting solely from evidentiary

insufficiency, this Court held that a new trial did not involve double jeopardy:

> "It is elementary in our law that a person can be tried a second time for an offense when his prior conviction for that same offense has been set aside by his appeal. *United States* v. *Ball,* 163 U. S. 662, 672 (1896). . . . Even though petitioner be right in his claim that he did not request a new trial with respect to the portion of the charge dealing with the statute of limitations, still his plea of double jeopardy must fail. Under 28 U. S. C. § 2106, the Court of Appeals has full power to go beyond the particular relief sought. See *Ball,* and other cases, *supra.*" *Id.,* at 425.

Until this stage in the *Forman* opinion the Court seemed to adopt the more expansive implication of *Yates, i. e.,* that an appellate court's choice of remedies for an unfair conviction—whether reversal be compelled by failure of proof or trial error—would not turn on the relief requested by the defendant. The *Forman* decision, however, was not entirely free from ambiguity. In the course of meeting the petitioner's argument that *Sapir* demanded a judgment of acquittal, the Court noted two differences between those cases. In the first place, "the order to dismiss in *Sapir* was based on the insufficiency of the evidence, which could be cured only by the introduction of new evidence"; in *Forman,* however, " '[t]he jury was simply not properly instructed.' " 361 U. S., at 426. In addition, "Sapir made no motion for a new trial in the District Court, while here petitioner '[Forman] filed such a motion. That was *a decisive factor* in Sapir's case." *Ibid.* (Emphasis added.)

The Court's holdings in this area, beginning with *Bryan,* can hardly be characterized as models of consistency and clarity. *Bryan* seemingly stood for the proposition that an appellate court could order whatever relief was "appropriate"

or "equitable," regardless of what considerations prompted reversal. A somewhat different course was taken by the concurrence in *Sapir,* where it was suggested that a reversal for evidentiary insufficiency would require a judgment of acquittal *unless* the defendant had requested a new trial. *Yates,* on the contrary, implied that new trials could be ordered to cure prior inadequacies of proof even when the defendant had not so moved. While not completely resolving these ambiguities, *Forman* suggested that a reviewing court could go beyond the relief requested by a defendant and order a new trial under some circumstances. In discussing *Sapir,* however, the *Forman* Court intimated that a different result might follow if the conviction was reversed for evidentiary insufficiency *and* the defendant had not requested a new trial.

After the *Bryan-Forman* line of decisions at least one proposition emerged: A defendant who *requests* a new trial as one avenue of relief may be required to stand trial again, even when his conviction was reversed due to failure of proof at the first trial. Given that petitioner here appealed from a denial of a motion for a new trial—although he had moved for acquittal during trial—our prior cases would seem to indicate that the Court of Appeals had power to remand on the terms it ordered. To reach a different result will require a departure from those holdings.

### III

It is unquestionably true that the Court of Appeals' decision "represente[d] a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564, 571 (1977). By deciding that the Government had failed to come forward with sufficient proof of petitioner's capacity to be responsible for criminal acts, that court was clearly saying that Burks' criminal culpability had not been established. If the District Court had so held in the first instance, as the reviewing court said it should have done, a judgment of acquittal would have

been entered [5] and, of course, petitioner could not be retried for the same offense. See *Fong Foo* v. *United States*, 369 U. S. 141 (1962); *Kepner* v. *United States*, 195 U. S. 100 (1904). Consequently, as Mr. Justice Douglas correctly perceived in *Sapir*, it should make no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient, see 348 U. S., at 374. The appellate decision unmistakably meant that the District Court had erred in failing to grant a judgment of acquittal. To hold otherwise would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court. See *Sumpter* v. *DeGroote*, 552 F. 2d 1206, 1211–1212 (CA7 1977).

The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.[6] This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green* v. *United States*, 355 U. S. 184, 187 (1957); see *Serfass* v. *United States*, 420 U. S. 377, 387–388 (1975); *United States* v. *Jorn*, 400 U. S. 470, 479 (1971).

---

[5] When a district court determines, at the close of either side's case, that the evidence is insufficient, it "shall order the entry of [a] judgment of acquittal . . . ." Fed. Rule Crim. Proc. 29; see C. Wright, Federal Practice and Procedure § 462, p. 245 (1969).

[6] We recognize that under the terms of the remand in this case the District Court might very well conclude, after "a balancing of the equities," that a second trial should not be held. Nonetheless, where the Double Jeopardy Clause is applicable, its sweep is absolute. There are no "equities" to be balanced, for the Clause has declared a constitutional policy, based on grounds which are not open to judicial examination.

Nonetheless, as the discussion in Part II, *supra,* indicates, our past holdings do not appear consistent with what we believe the Double Jeopardy Clause commands. A close re-examination of those precedents, however, persuades us that they have not properly construed the Clause, and accordingly should no longer be followed.

Reconsideration must begin with *Bryan* v. *United States.* The brief and somewhat cursory examination of the double jeopardy issue there was limited to stating that " 'where the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial,' " 338 U. S., at 560, citing *Louisiana ex rel. Francis* v. *Resweber,* 329 U. S. 459, 462 (1947), and *Trono* v. *United States,* 199 U. S. 521, 533–534 (1905). These two cited authorities, which represent the totality of the Court's analysis, add little, if anything, toward resolving the double jeopardy problem presented by *Bryan.* *Resweber* involved facts completely unrelated to evidentiary insufficiency. There, in what were admittedly "unusual circumstances," 329 U. S., at 461, the Court decided that a State would be allowed another chance to carry out the execution of one properly convicted and under sentence of death after an initial attempted electrocution failed due to some mechanical difficulty. In passing, the opinion stated: "But where the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial. *United States* v. *Ball,* 163 U. S. 662, 672." *Id.,* at 462. *Trono* made a similar comment, citing *Ball* for the proposition that "if the judgment of conviction be reversed on [the defendant's] own appeal, he cannot avail himself of the once-in-jeopardy provision as a bar to a new trial of the offense for which he was convicted." 199 U. S., at 533–534.[7]

---

[7] *Trono* arose from a murder prosecution in the Philippines. After a nonjury trial the defendants were acquitted of the crime of murder, but were convicted of the lesser included offense of assault. They appealed to the Supreme Court of the Philippine Islands, which reversed the judgment

The common ancestor of these statements in *Resweber* and *Trono,* then, is *United States* v. *Ball,* which provides a logical starting point for unraveling the conceptual confusion arising from *Bryan* and the cases which have followed in its wake. This is especially true since *Ball* appears to represent the first instance in which this Court considered in any detail the double jeopardy implications of an appellate reversal. *North Carolina* v. *Pearce,* 395 U. S. 711, 719–720 (1969).

*Ball* came before the Court twice, the first occasion being on writ of error from federal convictions for murder. On this initial review, those defendants who had been found guilty obtained a reversal of their convictions due to a fatally defective indictment. On remand after appeal, the trial court dismissed the flawed indictment and proceeded to retry the defendants on a new indictment. They were again convicted and the defendants came once more to this Court, arguing that their second trial was barred because of former jeopardy. The Court rejected this plea in a brief statement:

> "[A] defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted. *Hopt* v. *Utah,* 104 U. S. 631; 110 U. S. 574; 114 U. S. 488; 120 U. S. 430; *Regina* v. *Drury,* 3 Cox Crim. Cas. 544; *S. C.* 3 Car. & Kirw. 193; *Commonwealth* v. *Gould,* 12 Gray, 171." 163 U. S., at 672.

and entered convictions for murder, increasing their sentences as well. This Court affirmed, although "it seems apparent that a majority of the Court was unable to agree on any common ground for the conclusion that an appeal of a lesser offense destroyed a defense of a former jeopardy on a greater offense for which the defendant had already been acquitted." *Green* v. *United States,* 355 U. S. 184, 187 (1957). *Green* expressly confined the *Trono* decision to "its peculiar factual setting," namely, an interpretation of a "statutory provision against double jeopardy pertaining to the Philippine Islands." 355 U. S., at 187; see *Price* v. *Georgia,* 398 U. S. 323, 327–328, n. 3 (1970).

The reversal in *Ball* was therefore based not on insufficiency of evidence but rather on trial error, *i. e.,* failure to dismiss a faulty indictment. Moreover, the cases cited as authority by *Ball* were ones involving trial errors.[8]

We have no doubt that *Ball* was correct in allowing a new trial to rectify *trial error:*

> "The principle that [the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an *error in the proceedings* leading to conviction is a well-established part of our constitutional jurisprudence." *United States* v. *Tateo,* 377 U. S. 463, 465 (1964) (emphasis supplied).

See *United States* v. *Wilson,* 420 U. S. 332, 341 n. 9 (1975); *Forman,* 361 U. S., at 425. As we have seen in Part II, *supra,* the cases which have arisen since *Ball* generally do not distin-

---

[8] *Hopt* v. *Utah,* 120 U. S. 430 (1887), was the last of four appeals by a defendant from a murder conviction in the Territory of Utah. On the first three appeals the convictions were reversed and new trials ordered because of trial errors, *e. g.,* improper instruction, 104 U. S. 631 (1882); absence of the accused during a portion of the trial, improper hearsay testimony received, and prejudicial instruction, 110 U. S. 574 (1884); and inadequate record due to failure to record jury instructions, 114 U. S. 488 (1885). No claim of evidentiary insufficiency was sustained by the Court, and indeed no discussion of double jeopardy appears. *Commonwealth* v. *Gould,* 78 Mass. 171 (1858), was a state case in which a defendant was ordered tried on a superseding indictment, after the original indictment had been challenged. Finally, in the English case, *Queen* v. *Drury,* 3 Cox Crim. Cas. 544, 175 Eng. Rep. 516 (Q. B. 1849), the defendants had been given an improper sentence after being found guilty at a trial to which no other error was assigned. The court allowed a retrial, saying:

"A man who has been tried, convicted and attainted on an insufficient indictment, or on a record erroneous in any other part, is in so much jeopardy literally that punishment may be lawfully inflicted on him, unless the attainder be reversed in a Court of Error; and yet when that is done, he may certainly be indicted again for the same offense, and the rule would be held to apply, that he had never been in jeopardy under the former indictment." *Id.,* at 546, 175 Eng. Rep., at 520.

guish between reversals due to trial error and those resulting from evidentiary insufficiency. We believe, however, that the failure to make this distinction has contributed substantially to the present state of conceptual confusion existing in this area of the law. Consequently, it is important to consider carefully the respective roles of these two types of reversals in double jeopardy analysis.

Various rationales have been advanced to support the policy of allowing retrial to correct trial error,[9] but in our view the most reasonable justification is that advanced by *Tateo, supra,* at 466:

> "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction."

See *Wilson, supra,* at 343–344, n. 11; *Wade* v. *Hunter,* 336 U. S. 684, 688–689 (1949). In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e. g.,* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. See Note, Double Jeopardy: A New Trial After

---

[9] It has been suggested, for example, that an appeal from a conviction amounts to a "waiver" of double jeopardy protections, see *Trono* v. *United States,* 199 U. S. 521, 533 (1905); but see *Green, supra,* at 191–198; or that the appeal somehow continues the jeopardy which attached at the first trial, see *Price* v. *Georgia, supra,* at 326; but see *Breed* v. *Jones,* 421 U. S. 519, 534 (1975).

Appellate Reversal for Insufficient Evidence, 31 U. Chi. L. Rev. 365, 370 (1964).

The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.[10]   Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury.   Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

The importance of a reversal on grounds of evidentiary insufficiency for purposes of inquiry under the Double Jeopardy Clause is underscored by the fact that a federal court's role in deciding whether a case should be considered by the jury is quite limited.   Even the trial court, which has heard the testimony of witnesses firsthand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal.   See *United States* v. *Wolfenbarger,* 426 F. 2d 992, 994 (CA6 1970); *United States* v. *Nelson,* 419 F. 2d 1237, 1241 (CA9 1969); *McClard* v. *United States,* 386 F. 2d 495, 497 (CA8 1968); *Curley* v. *United States,* 81 U. S. App. D. C. 389, 392, 160 F. 2d 229, 232–233, cert. denied, 331 U. S. 837 (1947).   The prevailing rule has long been that a district judge is to submit a case to the jury if the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt.   See C. Wright, Federal Practice and

---

[10] In holding the evidence insufficient to sustain guilt, an appellate court determines that the prosecution has failed to prove guilt beyond a reasonable doubt.   See *American Tobacco Co.* v. *United States,* 328 U. S. 781, 787 n. 4 (1946).

Procedure § 467, pp. 259–260 (1969); *e. g., Powell* v. *United States,* 135 U. S. App. D. C. 254, 257, 418 F. 2d 470, 473 (1969); *Crawford* v. *United States,* 126 U. S. App. D. C. 156, 158, 375 F. 2d 332, 334 (1967). Obviously a federal appellate court applies no higher a standard; rather, it must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision. See *Glasser* v. *United States,* 315 U. S. 60, 80 (1942). While this is not the appropriate occasion to re-examine in detail the standards for appellate reversal on grounds of insufficient evidence, it is apparent that such a decision will be confined to cases where the prosecution's failure is clear.[11] Given the requirements for entry of a judgment of acquittal, the purposes of the Clause would be negated were we to afford the government an opportunity for the proverbial "second bite at the apple."

In our view it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy. It cannot be meaningfully said that a person "waives" his right to a judgment of acquittal by moving for a new trial. See *Green* v. *United States,* 355 U. S., at 191–198. Moreover, as *Forman,* 361 U. S., at 425, has indicated, an appellate court is authorized by § 2106 to "go beyond the particular relief sought" in order to provide that relief which

---

[11] When the basic issue before the appellate court concerns the sufficiency of the Government's proof of a defendant's sanity (as it did here), a reviewing court should be most wary of disturbing the jury verdict:

"There may be cases where the facts adduced as to the existence and impact of an accused's mental condition may be so overwhelming as to require a judge to conclude that no reasonable juror could entertain a reasonable doubt. But in view of the complicated nature of the decision to be made—intertwining moral, legal, and medical judgments—it will require an unusually strong showing to induce us to reverse a conviction because the judge left the critical issue of criminal responsibility with the jury." *King* v. *United States,* 125 U. S. App. D. C. 318, 324, 372 F. 2d 383, 389 (1967) (footnote omitted).

would be "just under the circumstances." Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only "just" remedy available for that court is the direction of a judgment of acquittal. To the extent that our prior decisions suggest that by moving for a new trial, a defendant waives his right to a judgment of acquittal on the basis of evidentiary insufficiency, those cases are overruled.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.