**Alvino SANCHEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13-81-088-CR.**

Court of Appeals of Texas, Corpus Christi.

Sept. 16, 1982.

M. Cesar Guillen, La Feria, for appellant.

Reynaldo Cantu, Jr., Dist. Atty., Brownsville, for appellee.

Before NYE, C.J. and BISSETT and YOUNG, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for theft. Trial was before a jury. Punishment was assessed by the trial court at confinement in the Texas Department of Corrections for four years, probated for four years, and a fine of $5,000.00.

The appellant is the owner of a small grocery store in Harlingen known as Al's Mini Mart. In 1978, he entered into an agreement with Economy Oil Company wherein the latter agreed to install two 8,000 gallon gasoline tanks and two pumps at Al's Mini Mart, and to supply the appellant with gasoline at wholesale prices. The appellant agreed to sell the gasoline at a retail price and to remit to Economy the wholesale price for the gasoline sold. The number of gallons sold by the appellant, and thus the amount of money due Economy, was determined solely from a small computer in each pump which recorded the number of gallons passing through the pumps. The appellant was not obligated to

pay for the gasoline until it passed through the pumps.

The agreement between the appellant and Economy commenced on December 11, 1978. On that date, Economy recorded the numbers displayed by the pumps' computers. Thereafter, at the close of each business day, the appellant recorded the numbers displayed by the computers to determine the number of gallons sold that day and the amount of money that was due Economy.

Twice a month, Stan Spofford, an employee of Economy, went to Al's Mini Mart to complete a report denominated "Daily Report Work Sheet." This report shows the number of gallons of regular and unleaded gasoline sold by the appellant in the preceding two-week period, the wholesale value thereof, and the total amount of deposits made to Economy's account by the appellant. To determine the number of gallons sold, the report utilizes the numbers displayed on the pumps' computers at the beginning and end of the period covered by the report. The reading at the beginning of the period is subtracted from the reading at the end of the period to determine the number of gallons sold. This number is then multiplied by the wholesale price for the particular gasoline to determine the amount of money that was due Economy.

The daily report was compiled one to two days after the close of the period covered by the report. Because no employee of Economy went to Al's Mini Mart on the closing day for each report, Spofford relied upon the pump readings recorded by the appellant or his employees to determine the beginning and ending readings for the particular period covered by the report. Thus, Economy was dependent upon the appellant and his employees to accurately record the pump readings so that it could accurately determine the number of gallons sold and the amount of money due it.

As a precautionary measure, Spofford recorded the numbers displayed by the pumps' computers each time he went to Al's Mini Mart to make up the daily report. Since these readings were taken one to two days after the readings supplied by the appellant, they were not expected to match exactly with those of the appellant. Economy knew approximately, however, the number of gallons sold each day by the appellant, and with this knowledge, and the readings taken by Spofford, it could determine roughly the accuracy of the readings supplied by the appellant.

On January 31, 1979, Spofford went to Al's Mini Mart for the purpose of compiling a daily report. This report covered the period between January 14, 1979, through January 30, 1979. According to Spofford, the appellant told him that on the previous day, January 30, the computer in the regular pump displayed the number 15,310.0, and the one on the unleaded pump displayed 24,365.7. After he compiled his report and as he was leaving, Spofford read the pumps' computers and wrote down the readings as 21,957.9 on the regular pump and 25,228.8 on the unleaded pump. Spofford then submitted the report to his supervisor.

On February 5, 1980, Luz Cantu, a secretary employed by Economy, processed the report submitted by Spofford. She observed that there was a discrepancy of approximately 6,000 gallons between Spofford's readings and the appellant's readings. She telephoned Spofford and asked him to return to Al's Mini Mart and take new readings.

On February 6, 1980, Spofford returned to Al's Mini Mart and completed a new daily report. This report was for the period from February 4 through February 5, and was based on the readings taken by the appellant on those dates. This report also showed a large discrepancy between the readings Spofford took on January 30 and the readings supplied by the appellant. When confronted with this discrepancy, the appellant told Spofford to lock the pumps because, in his opinion, something must have been wrong with them.

The appellant paid for the number of gallons his readings showed that he had sold, but he refused to pay for the additional 6,000 gallons that Spofford's readings

showed that appellant had sold. As a result of his refusal to pay for these additional gallons, theft charges were filed against the appellant.

The indictment in this case reads, in pertinent part, as follows:

"... ALVINO SANCHEZ on or about the 6th day of February A.D. One Thousand Nine Hundred and Seventy-nine and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there unlawfully, intentionally and knowingly appropriate property, to-wit: UNITED STATES CURRENCY of the value of $200.00 or more; but less than $10,000.00 from the owner, Cecil Newton [district manager for Economy Oil Co.], without the effective consent of the owner of the property with the intent then and there to deprive the owner of said property, ...."

The appellant contends that there is a fatal variance between the allegations in the indictment and the evidence adduced at his trial. Specifically, the appellant contends that the State showed at most that he unlawfully appropriated gasoline, rather than United States Currency as alleged in the indictment.

The State's evidence, when viewed in the light most favorable to the verdict, showed that approximately 6,000 gallons of gasoline was unaccounted for on February 6, 1980. There was no evidence presented by the State in the course of the trial that the appellant sold the missing gasoline and then unlawfully appropriated the money.

It is well established in Texas that a conviction for theft cannot rest in whole or in part upon the theft of property not alleged in the indictment. *Wilson v. State*, 536 S.W.2d 375, 377 (Tex.Cr.App.1976); *Coronado v. State*, 508 S.W.2d 373, 374 (Tex.Cr.App.1974); *Ballinger v. State*, 481 S.W.2d 421, 422 (Tex.Cr.App.1972).

In the instant case, the State failed to prove that the appellant unlawfully appropriated United States Currency or the gasoline in question. The record does not show that the computer was correct; that the employees (who had equal opportunity to appropriate the gasoline) did not take it; nor that the gasoline did not leak out of the underground tank. We, therefore, must hold that the evidence in this case is insufficient to sustain the conviction. For this reason, we must reverse the judgment of the trial court and order an acquittal to be entered. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

REVERSED and ACQUITTAL ORDERED.