887 F.2d 1082
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John S. ONORATO, Defendant-Appellant.
 No. 88-5204.
 United States Court of Appeals, Fourth Circuit.
 Submitted: June 23, 1989.
Decided: Sept. 27, 1989.
 
 J. Preston Warren, on brief, for appellant.
 E. Bart Daniel, United States Attorney, Robert H. Bickerton, Assistant United States Attorney, on brief, for appellee.
 Before K.K. HALL, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 John S. Onorato appeals his conviction in the United States District Court for the District of South Carolina on one count of conspiracy to commit an offense against the United States by stealing foreign shipments, in violation of 18 U.S.C. Sec. 371, and three counts of knowing possession of goods stolen while moving as part of a foreign shipment, in violation of 18 U.S.C. Sec. 659. Appellant challenges the sufficiency of the evidence to support his conviction and argues that the district court ought to have dismissed all charges at the close of appellant's case. In addition, appellant contends that the prosecution should have been required to obtain expert handwriting analysis of a disputed signature, and that the court erred in not recessing the trial for this purpose. Finding no merit in any of these contentions, we affirm the judgment of the district court.
 
 I.
 
 2
 In December of 1986, Charles W. Hester, Chris Patrick Wiggins, and Don John Hays, Jr., initially broached the idea of stealing property under the control of the United States Customs Service from the North Charleston Customs Terminal in North Charleston, South Carolina. Over the next several months, their discussions took on more concrete form and each agreed to a role in commission of the crime. Hester, a U.S. customs inspector, agreed to identify imported property that could be stolen and to supply the necessary paperwork to remove the property from the terminal; Hays agreed to supply a truck driver to transport the property; and Wiggins agreed to supply a buyer for the stolen merchandise.
 
 
 3
 Pursuant to this arrangement, Wiggins contacted appellant, John Onorato. Appellant is Wiggins' second cousin. Wiggins inquired whether appellant knew of anyone who might be interested in obtaining stolen video cassette recorders, and appellant replied that he was interested. Wiggins informed appellant of his friend in the customs service and their plans to steal the merchandise.
 
 
 4
 At appellant's request, Hester and Wiggins stole a sample VCR from the terminal and gave it to appellant to inspect and display to prospective buyers. Their attempt to steal a container of 1600 VCRs in mid-March of 1987 had to be aborted, however.
 
 
 5
 Hester and Wiggins dispensed with Hays and formed new plans to steal a container of televisions. Appellant apprised them that he would prefer that they steal 19-inch televisions because these would sell better, and Hester and Wiggins agreed to comply. As before, a sample was stolen from the terminal in advance for appellant's inspection.
 
 
 6
 On April 1, 1987, Hester, Wiggins, and a new driver whom they had hired succeeded in stealing a container of approximately 250 19-inch televisions from the terminal. Appellant took possession of the televisions on April 3, 1987, and proceeded to sell them. A second container of 19-inch televisions was stolen on April 6, and delivered to appellant the same day.
 
 
 7
 On April 17, internal affairs officers from the customs service confronted and questioned Hester. He admitted his guilt and implicated Wiggins and the buyer, whom he had never met but whom he had heard Wiggins refer to as Wiggins' cousin, John.
 
 
 8
 Appellant was indicted by a grand jury, and on July 25, 1988, he was convicted after a jury trial on one count of conspiracy to commit an offense against the United States by stealing foreign shipments, in violation of 18 U.S.C. Sec. 371, and three counts of knowing possession of goods stolen while moving as part of a foreign shipment, in violation of 18 U.S.C. Sec. 659. He was sentenced to three years imprisonment on the conspiracy charge and three years each on the three theft charges, all sentences to run concurrently. This appeal followed.
 
 II.
 
 9
 Appellant claims that the evidence presented to the district court jury was insufficient to prove beyond a reasonable doubt his guilt on any of the counts of which he was convicted. We disagree.
 
 
 10
 It is well established that on review of a criminal conviction, we must sustain the jury verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). In appellant's case, the evidence of guilt is clearly sufficient to meet the Glasser standard.
 
 
 11
 Appellant disputes his involvement in the conspiracy to steal property. However, Wiggins, appellant's cousin, testified that he had directly informed appellant of his friend in the customs service and their intention to steal goods, and that appellant had expressed interest in purchasing the goods. Stolen televisions were found in appellant's possession as well as in the possession of persons who had bought their televisions from appellant. This evidence amply supports the jury finding that appellant knowingly participated in the conspiracy to steal merchandise from the customs terminal.
 
 
 12
 Appellant also pleads ignorance that the televisions he purchased from Wiggins were stolen. In addition to Wiggins' testimony to the contrary, circumstantial evidence exists that appellant knew he was obtaining stolen property. For example, appellant provided the persons to whom he sold the televisions with various conflicting stories as to where he had bought the televisions and how he had obtained them at a discount price. A rational jury could conclude that appellant told conflicting stories in order to conceal that the televisions were stolen. Such evidence provides a more than adequate basis for the jury finding that appellant knew he was dealing in stolen property.
 
 
 13
 Appellant strongly contests Wiggins' credibility. However, we "do not weigh the evidence or review the credibility of witnesses in resolving the issue of substantial evidence." United States v. Arrington, 719 F.2d 701, 704 (4th Cir.1983). Determining the credibility of the witnesses "is a matter solely within the province of the jury." Piqford v. United States, 518 F.2d 831, 836 (4th Cir.1975). Through its verdict, the jury has expressed its belief that Wiggins was truthful in his testimony concerning appellant's conduct. We refuse to question the jury's determination.
 
 
 14
 Appellant also claims that the court ought to have dismissed all charges against him at the close of appellant's case. The Supreme Court has recognized that "[t]he prevailing rule has long been that a district judge is to submit a case to the jury if the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt." Burks v. United States, 437 U.S. 1, 16 (1978). As we have already held that there was substantial evidence to support the jury verdict, it is obvious that the district court acted properly in refusing to dismiss the charges against appellant.
 
 III.
 
 15
 Appellant also contends that a new trial is mandated by the prosecution's failure to obtain expert handwriting analysis of a signature alleged to be appellant's. We reject appellant's claim as entirely without merit.
 
 
 16
 The disputed signature was located at the bottom of a fraudulent receipt prepared by Wiggins. Wiggins testified that he had prepared the receipt at appellant's direction for appellant to exhibit as proof of purchase to a prospective purchaser of the televisions. He further testified that he observed appellant place a fake signature at the bottom of the receipt, writing with his left hand in order to disguise his handwriting from the prospective purchaser. The receipt was admitted into evidence.
 
 
 17
 Appellant claims that the prosecution ought to have been required to have a handwriting expert analyze the signature in order to determine beyond a reasonable doubt whether it was written by appellant. The Federal Rules of Evidence impose no such affirmative obligation on the prosecution, and we decline to create one. Rule 702 permits either party to call a qualified expert witness to assist the trier of fact to understand the evidence or to determine a fact in issue; however, it in no way insists that either party do so. Appellant knew of the existence of the receipt prior to its introduction at trial, but made no effort to have the signature analyzed himself. He has no basis on which to complain about the prosecution's decision not to do so.
 
 
 18
 Finally, appellant suggests that the district court erred in failing to recess the trial for expert analysis of the signature, either by the prosecution or by the court itself. Appellant did not request a continuance at trial, however, and the court has no responsibility to declare a recess on its own motion. Furthermore, the district court has no more responsibility to provide for a handwriting analysis than does the prosecution.
 
 
 19
 For the foregoing reasons, the judgment of conviction is
 
 
 20
 AFFIRMED.