961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roger Sherman ANDERSON, Defendant-Appellant.
 No. 91-5907.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before RALPH B. GUY, JR. and DAVID A. NELSON, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Roger Sherman Anderson appeals from his conviction on three counts of aggravated sexual abuse. 18 U.S.C. § 2241(a)(1) and (2). On appeal, Anderson claims that (1) the district court erred in determining that the evidence was sufficient to convict, (2) the district court erred in determining that there was sufficient evidence regarding jurisdiction, (3) the district court abused its discretion in determining that the testimony of an impeachment witness was not relevant, and (4) the district court abused its discretion by failing to give a jury instruction submitted by Anderson. For the reasons that follow, we affirm.
 
 I.
 
 2
 A three-count indictment was filed charging Anderson with sexually abusing C.D. Moore on or about April 24, 1990; sexually abusing V.L. Landrum on or about May 15, 1990; and sexually abusing J.R. Lloyd on or about June 8, 1990, all in violation of 18 U.S.C. § 2241(a)(1) and (2).[1]
 
 
 3
 Each victim testified at trial, giving similar testimony regarding how they each had brief friendly conversations with Anderson, they talked about employment possibilities, and then, at his suggestion, accompanied him in his car to go for a drive. The evidence suggests that he then drove each of them to a wooded area and that he took each victim deep into the woods and sexually abused them. Each victim testified that they were terrified.
 
 
 4
 Anderson told Moore that they were going to Fort Knox to meet a friend. He then drove her to the woods. He told Moore he had a gun, which she never actually saw. Moore testified that Anderson said there was another man in the woods with a rifle and camera. Anderson said the man was taking pictures so that if she went to the police, the photos would prove that her acts were voluntary. After sexual intercourse, Anderson gave Moore a white cloth with which to clean herself. The white cloth was left on a log in the woods where the rape occurred.
 
 
 5
 After driving Landrum to the woods, Anderson told her there were hillbillies in the woods who wanted her to undress and perform sexual acts with him. He blindfolded and bound her and told her that if she did not have sex with him the hillbillies would kill both of them, but that if she cooperated, the hillbillies would let them go.
 
 
 6
 Lloyd's story had a little different twist. While she was waiting in a corridor of the county courthouse to report to the probation department, Anderson began to converse with her and gave her an offer of employment. As a requirement of her probation, she was not supposed to leave the Louisville area. After leaving the courthouse, defendant asked Lloyd to accompany him in his car, and then drove her to the woods. When they were deep in the woods, Anderson told her that his friend, a caveman who was hiding in the woods, would kill her if he saw her. He told her that his friend had a video camera and was taking pictures. He pretended to leave and speak with his friend, and, finally, he placed paper bags on the ground and raped her as she lay upon the bags. When Lloyd reported the incident to the police, her story changed. She stated that Anderson had abducted her at gun point from the street.
 
 
 7
 After a jury trial, Anderson was convicted on all counts, and he now appeals.
 
 II.
 
 8
 Defendant contends that the government failed to present evidence sufficient to support the verdict of guilt. The substance of defendant's argument is that the stories told by the victims, replete with reference to unseen hillbillies with guns or cameras or both, were too bizarre to have been accepted by a rational jury. We disagree.
 
 
 9
 In reviewing the sufficiency of evidence to support a conviction, we view all the evidence in the light most favorable to the government. We must affirm if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 320 (1979).
 
 
 10
 At the close of the government's case, and again at the close of all proofs, defendant moved for a judgment of acquittal, pursuant to Fed.R.Crim.P. 29, which the district court denied. Our standard of reviewing a motion for acquittal can be found in United States v. Overmyer, 867 F.2d 937, 938 (6th Cir.1989). It states:
 
 
 11
 It is well settled that the test to be applied by a trial court in determining a defendant's motion for acquittal pursuant to [Fed.R.Crim.P. 29] is taking the evidence and the inferences most favorably to the government, if there is such evidence therefrom to conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury.... The Supreme Court has observed that the granting of a motion of acquittal, "... will be confined to cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).
 
 
 12
 An appellate court, in reviewing a trial court's decision regarding a Rule 29 motion, applies the same principles to the record it has before it. United States v. Gibson, 675 F.2d 825 (5th Cir.1982).
 
 
 13
 (citations omitted).
 
 
 14
 The record shows that the three victims presented evidence of defendant's aggressive, physically threatening behavior. While recognizing that the stories related by the victims were bizarre, we cannot ignore the fact that these stories, taken in a light most favorable to the government, unquestionably demonstrate behavior falling within the definition of U.S.C. § 2241(a)(1) and (2) and we make no assessment of the credibility of the testimony of the victims, as that determination is entirely within the province of the trier of fact. United States v. Schultz, 855 F.2d 1217, 1219 (6th Cir.1989). We find the evidence adduced by the government amply supports the jury's verdict.
 
 
 15
 We now turn to the question of jurisdiction. There is ample evidence that the abuse occurred within the territorial jurisdiction of the United States. After raping Moore, Anderson gave her a white cloth with which to clean herself. Two days later, Moore took federal agents to the site of the rape and the soiled white cloth was recovered. On the same day she was raped, Lloyd took federal agents to the rape site where they found and photographed the paper bags that Anderson forced her to lie upon when he raped her. At trial, when asked where he and Lloyd went, Anderson testified: "She said that she had a friend of hers that lived on Fort Knox. So I said ... I went to this place out there, I was telling her that I went by this lake and it was real laid back." (App. at 169). The federal agents testified that the locations to which the victims were taken and where the evidence was found and photographed were within the boundaries of the Fort Knox Military Reservation. Anderson testified that he took all three women to Fort Knox. (App. at 185). We hold that jurisdiction was established.
 
 
 16
 Anderson contends that the district court committed reversible error by refusing to permit him to call a witness to impeach the credibility of Lloyd. Anderson wanted to subpoena the county clerk to show that Lloyd failed to appear at a scheduled state court proceeding and that a bench warrant was issued for her failure to appear. Lloyd admitted at trial that she lied because she feared jeopardizing her probation by admitting that she left the Louisville area. At a sidebar conference, the trial judge informed defense counsel that he would have "considerable leeway" in arguing to the jury the "wildly inconsistent statements" made by Lloyd. (App. 215). The trial court found, and we agree, that additional testimony regarding the supposed bench warrant would have done nothing to further defense efforts to impeach Lloyd's credibility. There was no abuse of discretion.
 
 
 17
 Finally, defendant argues that the district court abused its discretion by failing to give a special jury instruction submitted by defendant regarding the credibility of witnesses who make prior inconsistent statements. "The district court has broad discretion in determining appropriate jury instructions, and the defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instructions." United States v. Townsend, 796 F.2d 158, 163 (6th Cir.1986) (citation omitted).
 
 
 18
 The record shows that the request was made as follows, "MR. FOWLER: ... I wanted to request the court in its instructions to add an instruction concerning the effect of a prior inconsistent statement or conduct by a witness. The basis of this request is the fact that Miss Lloyd testified to certain items for which she admitted that she had given prior inconsistent statements...." (App. at 215).
 
 
 19
 The trial judge instructed the jury as follows:
 
 
 20
 You as jurors are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified and every matter in evidence which tends to show whether a witness is worthy of belief.
 
 
 21
 Consider each witness's intelligence, motive and state of mind and demeanor on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case. The manner in which each witness may be affected by the verdict and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.
 
 
 22
 Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit that testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently and innocent misrecollection like failure of recollection is not an uncommon experience.
 
 
 23
 In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail and whether the discrepancy results from innocent error or from intentional falsehood. After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.
 
 
 24
 (App. 220-21).
 
 
 25
 We hold that the instruction and the judge's ruling, "I ... think you got considerable leeway in your argument. You can argue about what I perceive to be almost wildly inconsistent statements she made" are adequate.
 
 
 26
 Finding no errors, we AFFIRM.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The section states:
 (a) By force or threat. Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly causes another person to engage in a sexual act--
 (1) by using force against that person; or
 (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;