56 F.3d 62
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas M. POOLE, Defendant-Appellant.
 No. 94-5676.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 28, 1995
Decided: May 24, 1995
 
 Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Thomas M. Poole of four counts of mail theft by a postal employee in violation of 18 U.S.C. Sec. 1709 (1988). Count one charged Poole with stealing currency from a registered mail envelope on October 24, 1993. Counts two through four charged Poole with similar thefts of registered mail envelopes on October 31, 1993. Poole appeals and challenges the sufficiency of the evidence. Finding that the evidence is sufficient to support Poole's jury convictions when construed in the light most favorable to the Government, we affirm.
 
 I.
 
 2
 Testimony at Poole's trial disclosed that he worked as a distribution clerk for the U.S. Postal Service at its main post office in Durham, North Carolina ("Durham post office"). Poole frequently worked on Sundays, when there were very few postal employees on duty.
 
 
 3
 On October 23, 1993, Judy Neville, a clerk at the Eno Station Post Office in Durham ("Eno Station"), placed the daily receipts in a registered mail envelope, and locked the envelope inside a canvas registered mail pouch. Neville then took the pouch to the Durham post office. Neville pushed the pouch underneath the locked door of a registry room from which Wells Fargo was to collect the deposit the next day and deliver it to Central Carolina Bank (the "Bank"). Poole's job as a distribution clerk did not require him to process registered mail. Thus, he was not authorized to enter the registry room at any time and did not have a key to it.
 
 
 4
 On October 24, the day after Neville brought her bank deposits to the Durham post office, a remote controlled camera aimed at the registry room recorded Poole removing a registered mail pouch and taking it. At about the same time, George Kee, another postal employee, saw Poole leave work with a plastic bag. The Eno Station receipts were never received by the Bank.
 
 
 5
 On October 30, Theodore Freeland, a window clerk at the Shannon Plaza Branch of the Durham Post Office ("Shannon Plaza"), placed that station's daily bank deposits in three registered mail envelopes to be sent to the Bank. The bank deposits, along with several other pieces of registered mail, were put inside a canvas registered mail pouch, and placed in an unlocked vault at Shannon Plaza. At the end of the day, the vault was locked.
 
 
 6
 The next morning, Roy Montague, manager of Shannon Plaza, unlocked the vault, took the pouch to the Durham post office, and placed it in the registry cage within reach of the door. Montague did not examine the contents of the bag, but the accompanying documents and receipts indicated that the pouch contained three bank deposits from Shannon Plaza. At approximately 5:20 on October 31, Poole removed a pouch from the registry room.
 
 
 7
 Postal Inspector Douglas Funderburg was working at the Durham post office on October 31, investigating weekend thefts of registered mail. From his position inside a lookout gallery suspended from the ceiling, at approximately 6:05 p.m., Funderburg saw Poole put a bundle of envelopes in a sweater and then place the sweater inside a plastic grocery bag. One of the envelopes bore a red bull's eye identical to the mark used by the Postal Service on the registered mail envelopes used for its bank deposits. The Bank never received the October 31 Shannon Plaza deposits.
 
 
 8
 At trial, Poole denied stealing any bank deposits and claimed that although he removed the registered mail pouches from the locked registry room on October 24 and 31, he then placed them in the supervisor's office for safekeeping. He also contended that the mail containing the red bull's-eye, observed by Funderburg on October 31, was his own personal mail and did not belong to the Postal Service.
 
 
 9
 The jury found Poole guilty on all four counts. The court sentenced him to eighteen months imprisonment, thirty-six months supervised release, a fine of $3000, restitution of $12,641.30, and a special assessment of $200. Poole filed a timely appeal.
 
 II.
 
 10
 Poole asserts that the prosecution failed to present sufficient evidence to convict him of mail theft. Specifically, Poole contends that the Government failed to prove that the sacks that he removed contained the relevant registered envelopes.
 
 
 11
 A reviewing court must uphold a jury's verdict "if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir.1993); see also Glasser v. United States, 315 U.S. 60, 80 (1942). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be 'confined to cases where the prosecution's failure is clear.' " United States v. Jones, 735 F.2d 785, 791 (4th Cir.) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), cert. denied, 469 U.S. 918 (1984). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 12
 Poole first contends that the evidence against him on count one was insufficient, alleging that the Government did not prove that the registered mail pouch he removed on October 24 actually contained the Eno Station bank deposits. In support of his position, Poole relies on the testimony of Winston Layton and Jerry White, postal workers who testified that, on the morning of October 24, they entered the registry room and removed a pouch containing only time cards. Layton opened another pouch that did not contain time cards, and placed that pouch inside a locked red mailbox just outside the registry room. Neither Layton nor White could recall how many pouches were in the registry room.
 
 
 13
 According to Poole, this testimony supports the conclusion that Layton and White placed the Eno Station pouch inside the locked red mailbox. In the alternative, Poole contends that, since the evidence shows there was more than one mail sack in the registry room, the prosecution did not prove that the mail sack removed by Poole was the Eno Station pouch. Finally, Poole contends that the prosecution did not prove that the sack retrieved by Poole was not placed in his supervisor's office.
 
 
 14
 When construed in the light most favorable to the Government, the record here discloses sufficient evidence to support Poole's conviction on count one. The Eno Station receipts were placed in the registry room. The receipts disappeared. Poole admits that, on the day the pouch disappeared, he removed a mail pouch from the registry room. The jury apparently rejected Poole's defense that he removed the pouch to his supervisor's office for safekeeping, and we will not disturb that finding on appeal.
 
 
 15
 Likewise, when construed in the light most favorable to the Government, there is sufficient evidence to support Poole's convictions on counts two through four. Poole contends, however, that the Government failed to establish that the registered mail pouch he removed from the registry room on October 31 actually contained the Shannon Plaza bank deposits. Poole asserts that because Freeland placed the registry sacks, containing the relevant registered mail, inside an unlocked vault at Shannon Plaza, anyone in the post office could have extricated any and/or all of the registered mail inside the sack.
 
 
 16
 The evidence discloses however, that Freeland prepared one registered mail pouch, containing three bank deposits, and placed it in the vault. Montague picked up the only mail pouch in the vault the next morning (a pouch whose accompanying documentation indicated that the pouch contained three bank deposits), and placed the pouch in the registry room. On the same day, Poole removed a pouch from the registry room. Less than an hour later, Poole was observed removing what appeared to be registered mail from the post office. The Bank never received the Shannon Plaza deposits.
 
 
 17
 Construing this evidence in the light most favorable to the Government, we find that a jury could reasonably infer that Poole intended to steal the deposits in the mail pouches and that Poole committed mail theft beyond a reasonable doubt. Therefore, we affirm Poole's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED