**UNITED STATES of America, Plaintiff–Appellee—Cross–Appellant,**

v.

**Steven James REIMER, Defendant–Appellant—Cross–Appellee,**

Nos. 99–30328, 99–30372.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2000.

Decided Jan. 31, 2001.

Before B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER,* District Judge.

### MEMORANDUM**

 Steven Reimer appeals his conviction on eight counts of mail fraud, two counts of interstate transportation of money obtained by fraud, and one count of conspiracy. We reverse Reimer's convictions and hold that viewing the evidence in the light most favorable to the government, no "rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt," *Jack-*

*son v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Reimer was an employee of Churchill Companies, Inc., an investment company. The government indicted Reimer along with Clifford Tadema, the president of Churchill, and James Jensen, the president of JJJ Electronics, Inc., a company in which Churchill encouraged its clients to invest. In its indictment, the government charged that Reimer, Tadema, Jensen, and others had committed mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; interstate transportation of money obtained by fraud, in violation of 18 U.S.C. § 2314; and conspiracy to defraud, in violation of 18 U.S.C. § 371. Tadema and Jensen entered into plea bargains with the government and testified on the government's behalf at Reimer's trial. Because the parties are familiar with the facts, we address each of the relevant transactions only briefly.

### The Yeager Checks

Yeager mailed four checks to Jensen in 1994 to invest in JJJ. Yeager testified that he was encouraged to make the investment by Reimer and his partner, Tadema, who anticipated good returns and assured Yeager that his investments in Churchill were doing well. However, Yeager could not say that Reimer had lied or engaged in fraud. Tadema, the prosecution's chief witness, testified that no one misled or lied to Yeager to induce him to send the checks, and denied that there was any scheme, plot, or conspiracy to defraud Yeager. With respect to the two later checks, the government points to no evidence of a "scheme ... to defraud" to establish a

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

violation of 18 U.S.C. § 2314 and, with respect to the two earlier checks, it does not contend on appeal that evidence showed that Reimer "for the purpose of executing [a scheme to defraud] ... cause[d] [the checks] to be deposited" in the mail, to establish a violation of 18 U.S.C. § 1341.

## The Lemons Letter

Reimer was convicted of two counts of mail fraud for two letters he sent to Lemons in September 1994. These letters proposed revisions to an earlier $300,000 promissory note. Reimer was charged with mail fraud concerning this note, but was later acquitted. Lemons admitted that he made his own decision to invest, using his knowledge and experience in business matters. Tadema testified that there was no fraudulent scheme to cause Lemons to invest and stated that Lemons had told him he dealt directly with Jensen in investing the $300,000. On appeal, the government fails to point to evidence showing that these letters were part of a scheme to defraud.

## Stenerson's $50,000 Investment in JJJ

Reimer was convicted of mail fraud for a letter sent by Jensen's company to Stenerson, transmitting a note reflecting a $50,000 investment by Stenerson. Stenerson testified that he had discussed proposed investments in Jensen's companies with Reimer. However, Stenerson also stated that he had based his decision to invest on his negotiations with Tadema and his personal observations of the company. Moreover, Tadema testified that Reimer did not defraud or steal from Stenerson. The government offered no other evidence at trial. Nor could it point to any evidence on appeal in support of this conviction.

## Cockrell's $50,000 Investment in Alert Products

Reimer was convicted of three counts of mail fraud for mailings between Cockrell and Jensen. Cockrell did not testify, and there was no testimony from other witnesses of a scheme to defraud Cockrell. Moreover, Jensen testified that he had no knowledge of a scheme by Reimer to defraud Cockrell, and Tadema testified that Reimer did not agree to defraud Cockrell or cause anyone else to do so. The government argues only that the check Cockrell sent to Jensen was used to further a scheme to defraud from which Reimer benefitted, but it points to no evidence showing that Reimer caused the mailing for the purpose of executing a scheme to defraud.

## Conspiracy

The government, painting with a broad brush, describes various questionable practices of the investment group in which Reimer participated for a time. It fails, however, to point to evidence that Reimer entered into an agreement to accomplish an illegal act or that a party to such an agreement committed an overt act in furtherance of the agreement. *See United States v. Lothian,* 976 F.2d 1257, 1261 (9th Cir.1992). Even if the jury could have found the existence of a conspiracy by persons other than Reimer, there is no evidence that Reimer, knowing of such a conspiracy, intentionally acted to assist it. *See United States v. Smith,* 891 F.2d 703, 709–10 (9th Cir.1989).

Our disposition of this appeal makes it unnecessary to address the other points of error raised by Reimer and by the government in its cross-appeal. We note, however, two troubling trial errors.

■ First, the prosecutor effectively forced Reimer to call prosecution witnesses liars. In *United States v. Sanchez,*

176 F.3d 1214, 1219 (9th Cir.1999), we held this to be improper cross-examination.

 Second, the prosecutor was wrong to tell the jury, "under the guise of 'artful cross-examination,' ... the substance of inadmissible evidence." *Id.* at 1222, (quoting *United States v.. Hall,* 989 F.2d 711, 716 (4th Cir.1993) (internal quotation marks omitted)). On cross-examination, the prosecutor introduced the NASD decision, previously excluded by the court, supposedly to impeach Reimer. Instead of using the NASD decision solely for impeachment purposes, however, the prosecutor established that in entering into a settlement with the NASD, Reimer consented to the entry of findings that he had failed to make certain disclosures to investors.

The district court erred in overruling the objections to the prosecutor's improper questions.

Because the government failed to produce sufficient evidence to convict Reimer, it is ordered that the judgment of conviction is vacated and that the case is remanded to the district court with directions to dismiss the indictment. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Symington,* 195 F.3d 1080, 1088 (9th Cir.1999).

VACATED and REMANDED.