812 F.2d 1409
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
James Baxter KETNER, Defendant-Appellant
 No. 86-5276.
 United States Court of Appeals, Sixth Circuit.
 Jan. 16, 1987.
 
 Before MARTIN, JONES and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, James B. Ketner, appeals the judgment entered on his jury conviction for making a false statement on an FDIC bank loan application in violation of 18 U.S.C. Sec. 1014 (1982). Defendant raises two issues on appeal. First, he argues that there is not sufficient evidence to support the jury's guilty verdict. Second, he argues that the trial court erred in permitting the government to question him about a prior conviction. We find both of defendant's contentions to be meritless and affirm the judgment entered on his conviction.
 
 
 2
 In the late 1970's, Ketner loaned Hollis Hodgson $75,000. This loan was evidenced by a promissory note and secured by a deed of trust on a farm owned by Hodgson. On April 4, 1980, while the loan was still outstanding, Hodgson and Ketner met in attorney William Foutch's office for the purpose of updating the note and deed of trust. The unpaid interest on the note was added to the $75,000 to reach the new principal sum of $88,753.12 placed on the 1980 note. Rather than preparing a new deed of trust, however, Foutch simply changed the amount due on the deed to read $88,753.12.
 
 
 3
 Sometime later, Hodgson and Ketner reached an agreement by which Hodgson would give Ketner another piece of property consisting of about an acre and a half of land with a building on it [hereafter "Lucky Thirteen property"] in return for Ketner's release on the promissory note and mortgage on the farm. In order to execute this exchange, Hodgson, Ketner, and attorney James Shastid were to meet on May 13, 1981. Several times prior to this date, Shastid had Hodgson's secretary call Ketner to remind him of the necessity of bringing the promissory note and deed of trust to the meeting. Each time Ketner replied that he had the documents in his safe. However, when the meeting finally took place, Ketner did not bring the documents, claiming that he could not find them.
 
 
 4
 Nevertheless, the exchange of the Lucky Thirteen property for the $88,753.12 promissory note and mortgage took place on May 13, 1981. This exchange was designed to "wipe the slates clean" so that neither man would owe the other anything. For Hodgson's side of the deal, Shastid prepared a warranty deed conveying the Lucky Thirteen property to the Lucky Thirteen Corporation. Shastid and Hodgson testified that the property was transferred to the corporation instead of directly to Ketner because Ketner requested that it be done that way. Since Ketner had not brought the original promissory note and deed of trust with him, Shastid prepared a release to take care of Ketner's part of the bargain. This document, in essence, stated that Ketner released Hodgson from any and all claims arising previous to that date. Ketner signed the release, completing the bargain.
 
 
 5
 In November 1982, Ketner met with Harry Glass of Hamilton Bank for the purpose of obtaining a loan. On November 17, the bank loaned Ketner $35,000. Ketner repaid this money within a few days because his hoped for business deal fell through. A few days later, Ketner again requested a loan from Hamilton Bank, this time in the amount of $45,000, in order to purchase a restaurant in Knoxville, Tennessee. In response to the bank's request for a financial statement, Ketner supplied one that he had recently prepared for another bank. The statement listed the $88,753.12 promissory note from Hodgson as an asset, despite the fact that the release had been signed in May 1981. Ketner also produced copies of the promissory note and deed of trust for Glass.
 
 
 6
 A week later, Ketner brought in the original documents as requested by Glass. The documents appeared to have been altered as the amount and dates were typed over whited-out areas in several places. Ketner told Glass that these changes had been made in Foutch's office. Glass called Foutch and Foutch told him that some changes had indeed been made, however, they did not specifically discuss which changes had been made in Foutch's office. Foutch and Glass later realized that there had been some confusion between them as to what changes had actually been made in Foutch's office. Ketner never mentioned anything to Glass about the release he had signed in 1981 absolving Hodgson of any claims Ketner might have against him. On the basis of the promissory note as collateral, the bank loaned Ketner $45,000. This money has not been repaid.
 
 
 7
 On October 9, 1985, Ketner was indicted for violating 18 U.S.C. Sec. 1014, which forbids the making of false statements to an FDIC bank for the purpose of influencing the bank's action. Before trial, Ketner moved to prevent any questioning concerning an earlier conviction. The motion was denied.
 
 
 8
 Ketner was tried before a jury. The promissory note and deed of trust were placed into evidence during trial. An examination of the documents revealed that several additional changes, beyond those made in Foutch's office, had been made. Foutch testified that he had made no changes on the $88,753.12 promissory note, but that he had made certain changes on the deed of trust. Foutch's secretary, Nancy Walters Hutsell, verified this testimony. The promissory note had also been altered. For example, the date on the promissory note had been changed from January 1, 1980 to January 1, 1982. A similar change had been made on the deed of trust. The notary acknowledgement date on the deed of trust was changed from April 8, 1980 to January 1, 1982. The maturity date of the promissory note was changed from January 1, 1981 to January 1, 1983. The date on the deed of trust describing the maturity date of the note was also changed from January 1, 1981 to January 1, 1983. The notary commission expiration date on the deed of trust was changed from April 22, 1980 to April 22, 1984.
 
 
 9
 The notary, Nancy Walters Hutsell, testified that her 1984 commission expiration date was April 24, not April 22, as appears on the altered deed. Furthermore, she and Foutch both testified that their office was never open for business on any New Year's Day. Finally, the notary testified that after her marriage on December 25, 1981, she always signed her name as "Nancy Walters (Hutsell)," and not simply "Nancy Walters." The notary signature "Nancy Walters" appears on the alleged 1982 deed of trust that Ketner brought to Glass.
 
 
 10
 Ketner was convicted on January 23, 1986. He was sentenced to two years in prison and placed on probation for five years. He was also required to make restitution to Hamilton Bank. Ketner now appeals his conviction.
 
 I.
 
 11
 Section 1014 of Title 18 of the United States Code provides that:
 
 
 12
 Whoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... shall be fined ... or imprisoned.
 
 
 13
 A violation of this statute consists of three elements. First, the statement must be false. Second, the defendant must know that the statement is false. Third, the statement must have influenced the actions of an FDIC insured bank. See United States v. Erskine, 588 F.2d 721 (9th Cir.1978). To support a conviction under this statute, each element must be proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 14
 Ketner contends that the evidence is insufficient to support the jury's finding that he knowingly made a false statement. In Burks v. United States, 437 U.S. 1 (1978), the Supreme Court stated that a conviction will be overturned on the basis of insufficient evidence only where the government's "failure is clear." Id. at 17. A federal appellate court must sustain a jury's verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision. Id. In United States v. Orrico, 599 F.2d 113 (6th Cir.1979), this court defined substantial evidence as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.' " Id. at 117 (quoting United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977)).
 
 
 15
 Ketner first contends that the statements he made to the bank were not false. He argues that the note he assigned to the bank as collateral had value because he received nothing of value for the release that was executed, and the money owed on the note remained owing.
 
 
 16
 After reviewing the record, we conclude that there is sufficient evidence to support the finding that Ketner made false statements by: (1) listing the promissory note as an asset, (2) telling Glass that the note was still valid, and (3) claiming that Hodgson still owed him money. Evidence was introduced establishing that a full release of the debt had been executed. Ketner claims that the note was still valid because the release was invalid due to insufficient consideration. However, there is competent evidence demonstrating that Hodgson, at Ketner's request, transferred property to the Lucky Thirteen Corporation in consideration of the release. Consequently, the statements made by Ketner were false.
 
 
 17
 Ketner next claims that even if the statements were false, he did not know that they were false. The evidence, however, strongly indicates that Ketner was aware that the statements were false. While this evidence is not of a direct nature, "knowledge of the accused, being a subjective element of the crime, can of course be established only by circumstantial evidence, in the absence of an inculpatory statement by the defendant." United States v. Bullard, 458 F.2d 17, 18 (5th Cir.1972). There is a great deal of circumstantial evidence establishing Ketner's knowledge. The documents were in Ketner's possession and they were obviously altered. It seems reasonable to conclude that Ketner was the person who altered the documents and therefore had knowledge of their falsity. Accordingly, we conclude that there is substantial evidence to support Ketner's conviction.
 
 II.
 
 18
 Ketner next contends that the district court erred in permitting the government to question him about a prior conviction. Prior felony convictions are admissible to impeach a defendant's credibility. See, e.g., United States v. Wade, 364 F.2d 931, 936 (6th Cir.1966). The Federal Rules of Evidence provide that:
 
 
 19
 (a) [F]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.
 
 
 20
 Fed.R.Evid. 609. We conclude that the evidence was properly admitted under 609(a)(1) because its probative value outweighed its prejudicial impact. A trial court's decision to admit a past conviction will not be reversed except where the court has abused its discretion. See United States v. Jones, 647 F.2d 696, 700 (6th Cir.1981). In United States v. Sims, 588 F.2d 1145 (6th Cir.1978), this court set out the factors that a judge should take into account when making his determination of whether to admit a past felony conviction:1) The impeachment value of the prior crime.
 
 
 21
 2) The point in time of the conviction and the witness' subsequent history.
 
 
 22
 3) The similarity between the past crime and the charged crime.
 
 
 23
 4) The importance of the defendant's testimony.
 
 
 24
 5) The centrality of the credibility issue.
 
 
 25
 Id. at 1149. The final two factors are of primary importance to the consideration of this issue. The defendant's testimony was very important in this case because his primary defense was that he had not knowingly made false statements, and he so testified. The credibility of his testimony was equally important since resolution of the case would turn largely on whether the jury believed his testimony. Therefore, since credibility was of such significance in this case, the probative value of a prior conviction for impeachment purposes would be high. Also, there is very little similarity between the crime that Ketner was charged with and burning insured property, the basis of his prior conviction. This greatly lessens any prejudicial effect that the introduction of the prior conviction might have had. When the five factors are balanced, it is clear that the district court did not abuse its discretion in admitting the prior conviction.
 
 
 26
 Accordingly, we AFFIRM the judgment of conviction.