In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-358 CR


____________________



ARTHUR JAMES DEBLANC, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Court Cause No. 85708






MEMORANDUM OPINION



 A jury convicted appellant of the felony offense of Aggravated Assault. Tex. Pen.
Code Ann. § 22.02(a)(2) (Vernon Supp. 2004). The trial court assessed punishment at
confinement in the Institutional Division of the Texas Department of Criminal Justice for a
term of twelve years. The trial court did not include an affirmative finding on appellant's use
or exhibition of a deadly weapon in its judgment and sentence. See Lafleur v. State, 106
S.W.3d 91, 94-96 (Tex. Crim. App. 2003). Appellant presents two issues for our
consideration: (1) The trial court erred in refusing to instruct the jury on the lesser included
offense of misdemeanor assault; and (2) The evidence is legally and factually insufficient to
support appellant's conviction for aggravated assault. The State replies that the record does
contain both legally and factually sufficient evidence to sustain the verdict. However, as to
issue one, the State concedes error by the trial court, and also harm to appellant. 

 We begin with a review of the evidence for legal sufficiency. See Greene v. Massey,
437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); Burks v. United States, 437 U.S. 1, 98
S.Ct. 2141, 57 L.Ed.2d 1 (1978). In a review for legal insufficiency, we are to examine all
the record evidence in the light most favorable to the verdict, and disregard any evidence that
is contrary to the verdict. See Saxer v. State, 115 S.W.3d 765, 768-69, 772 (Tex. App.--Beaumont 2003, pet. filed) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979), and Clewis v. State, 922 S.W.2d 126, 132 n. 10 (Tex. Crim. App.
1996)). Under Tex. Pen Code Ann. § 22.02(a)(2) (Vernon Supp. 2004), a person commits
the offense of Aggravated Assault if the person intentionally, knowingly, or recklessly causes
bodily injury to the victim and uses or exhibits a deadly weapon during the commission of
the assault. "Bodily injury" means physical pain, illness, or any impairment of physical
condition. See Tex. Pen Code Ann. § 1.07(a)(8) (Vernon Supp. 2004). 

 In the instant case, the pertinent portion of the indictment reads as follows:

 ARTHUR JAMES DEBLANC . . . on or about the 21st day of October, Two
Thousand and One, . . . did then and there intentionally and knowingly and
recklessly cause bodily injury to [C.R.B.], . . . by hitting [C.R.B.] with a pipe,


 AND THE GRAND JURORS AFORESAID, upon their oaths aforesaid, do
further present in and to said Court, . . . that during the commission of the
aforesaid offense, the Defendant used and exhibited a deadly weapon, to-wit:
a pipe, that in the manner of its use and intended use was capable of causing
death and serious bodily injury, . . . 


 C.R.B. testified that he was struck in the head from behind by appellant, and sustained
a cut to his head that required "staples" to close. C.R.B. stated that when he turned around
after the blow to his head he observed appellant holding a "pipe." Appellant and C.R.B.
were brothers-in-law. Appellant's girlfriend had angered C.R.B.'s wife (appellant's sister). 
The assault took place only moments after a physical altercation erupted between appellant's
girlfriend and C.R.B.'s wife. Appellant testified that the assault was in response to being
fearful of C.R.B., as C.R.B. had just thrown a beer bottle at appellant and was reaching for
something on the ground. Appellant responded by picking up "one of the things that go on
the screen door" and striking C.R.B. in the head. Because of the disparity in their physical
sizes, (1) appellant says he had to have something to defend himself so as to get past C.R.B. and
into the apartment where belongings were kept. A rational jury could have found an assault
with bodily injury occurred, and could have rejected appellant's self-defense explanation as
justification for his conduct. (2) The only element of the offense upon which there appears to
be an issue is whether appellant used a "deadly weapon" to commit the assault upon C.R.B. 
 In Bailey v. State, 38 S.W.3d 157 (Tex. Crim. App. 2001), the Court of Criminal
Appeals further clarified the law of aggravated assault by use of a deadly weapon. Bailey
was convicted of the offense after evidence was elicited that he had threatened and repeatedly
struck his estranged wife, Cassandra, with a piece of wood variously described as a "board"
and a "stick." Id. at 158. On appeal, Bailey challenged the legal sufficiency of the evidence
supporting the deadly weapon finding. Id. The court of appeals determined the evidence was
legally insufficient to support the finding. Bailey v. State, 7 S.W.3d 721, 724 (Tex. App.--Corpus Christi 1999, pet. granted). In reversing the court of appeals, the Court of Criminal
Appeals relied on language taken from one of its recent cases, McCain v. State, 22 S.W.3d
497, 499 (Tex. Crim. App. 2000), an aggravated robbery case, also involving the question
of legal sufficiency to support the deadly weapon element of the offense. Bailey, 38 S.W.3d
at 158-59. The Bailey Court, quoting from McCain, interpreted § 1.07(a)(17)(B) of the
Texas Penal Code as follows:

 The statute does not say 'anything that in the manner of its use or intended
use causes death or serious bodily injury.' Instead the statute provides that a
deadly weapon is 'anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.' § 1.07(a)(17)(B) (emphasis
added). The provision's plain language does not require that the actor actually
intended death or serious bodily injury; an object is a deadly weapon if the
actor intends a use of the object in which it would be capable of causing death
or serious bodily injury. The placement of the word "capable" in the provision
enables the statute to cover conduct that threatens deadly force, even if the
actor has no intention of actually using deadly force.


Bailey, 38 S.W.3d at 158-59; McCain, 22 S.W.3d at 503. 

 For legal sufficiency purposes, we examine the evidence in the light most favorable
to the verdict to determine if a rational factfinder could have found appellant "intended a use
of the object in which it would be capable of causing death or serious bodily injury." Id. It
is uncontested that appellant struck C.R.B. in the head with a metallic object. The object was
referred to as a "pipe" and in various other ways, such as "iron piece," "a little iron piece,
like something off a screen door," "the pipe or whatever that is," "the thing from a screen
door," and "one of the things that go on the screen door." The trial court referred to it as "the
pipe or whatever it was that was used[.]"

 The State's witnesses indicated that appellant was the aggressor and had sneaked up
on C.R.B. from behind and struck him in the head. The testimony further indicated that
C.R.B.'s head-wound produced a good deal of blood so that he required a cloth-wrap on his
head to control the bleeding. Also, at some point, paramedics arrived and instructed C.R.B.
that he needed to go to the emergency room for treatment. 

 The State elicited testimony from Officer Jesus Tamayo of the Beaumont Police
Department to the effect that during his seven and one-half years with the department he has
investigated assaults involving metal pipes. From this, Officer Tamayo stated that in his
opinion a metal pipe is capable of causing death or serious bodily injury, and that a pipe can
be a deadly weapon. When Officer Tamayo was shown State's Exhibit 3, a photographic
depiction of the object, he agreed the photograph depicted the "pipe" that was found in the
case. Although Tamayo admitted on cross-examination that he never examined the object
referred to as the "pipe," nor did he actually see the object in question, it was for the jury to
decide the significance, if any, of this testimony. Saxer, 115 S.W.3d at 769. Under the
appropriate appellate standards for assessing the legal sufficiency of evidence to sustain a
conviction, we overrule that portion of issue two complaining of the lack of legally sufficient
evidence. 

 However, appellant says, and the State agrees, the trial court erred in not submitting
the lesser included offense of misdemeanor assault. The Court of Criminal Appeals has
adapted a two-step test to determine when a charge on a lesser included offense should be
given. See Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v. State,
622 S.W.2d 442, 444 (Tex. Crim. App. 1981). The first step is to decide whether the offense
comes within Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). This is usually stated
as "the lesser included offense must be included within the proof necessary to establish the
offense charged." See, e.g., Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993);
Aguliar, 682 S.W.2d at 558; Royster, 622 S.W.2d at 444. This statement of the rule is a
paraphrase of the language of art. 37.09(1), which describes the kind of lesser included
offense most frequently encountered. Of course, another definition of lesser included offense
in subdivisions (2), (3), or (4) of art. 37.09 may apply as well in the first step of a given case. 
See Schweinle v. State, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996). In this case, the State
concedes that misdemeanor assault (bodily injury) is a lesser included offense of the charged
offense. 

 The second step of the Aguilar/Royster test requires an evaluation of the evidence to
determine whether there is some evidence that would permit a rational jury to find that the
defendant is guilty only of the lesser offense. Schweinle, 915 S.W.2d at 18, Rousseau, 855
S.W.2d at 672; Aguilar, 682 S.W.2d at 558; Royster, 622 S.W.2d at 444. The evidence must
be evaluated in the context of the entire record. Ramos v. State, 865 S.W.2d 463 (Tex. Crim.
App. 1993). There must be some evidence from which a rational jury could acquit the
defendant of the greater offense while convicting him of the lesser included offense; and
anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser
charge. Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). 

 Here, the jury saw pictures of the object used, and was free to believe appellant did
not intend a use of the object in which it was capable of causing "serious bodily injury" or
death, as opposed to the "bodily injury" requirement of the lesser included offense. The jury
was presented with testimony from C.R.B. that he was virtually unfazed from the blow to his
head, and that after the blow C.R.B. was laughing about it because "I got a hard head. I ain't
going to lie. I got a hard head." C.R.B. also clarified his earlier testimony concerning
appellant's having picked up a "two by four" as the two women were fighting as follows: 

 Q.[Trial Counsel] Okay. Now, when you told him he better know what he was
doing with that stick, what did you mean by that?


 A.[C.R.B.] It was like - - I weigh about 280, right?


 Q. All right.


 A. You pick up a two by four against me and you think it's going to hurt me? 
It's going to break. 


 The complainant was a very large figure and there was a significant disparity in the
sizes of appellant and C.R.B. Appellant's testimony was that neither he nor his girlfriend
wanted trouble from C.R.B. or C.R.B.'s wife. Nevertheless, a group of people, including
C.R.B. followed appellant and his girlfriend as they attempted to leave; a fight took place
between the women; and C.R.B. not only refused to break up the fight, but physically
grabbed appellant to prevent him from helping his girlfriend. At the time C.R.B. was struck
in the head, from appellant's testimony, C.R.B. had already grabbed him and had refused to
allow appellant and his girlfriend to leave the apartment complex. Appellant explained the
assault on C.R.B. in the following way:

 Q.[Trial Counsel] Did you plan on assaulting him or anything like that?


 A.[Appellant] No, sir. I didn't plan on assaulting anybody that day. I didn't
want nobody to fight. 


 Q. Did you pick up that thing because it was handy right there?


 A. At that particular time, that's -- after [C.R.B.] chucked the bottle, I looked
and I seen something that I could pick up and I just picked it up and it was
there.


 Q. Why didn't you just throw it at him?


 A. He's kind of a big fellow, you know. I don't -- at that particular time my
intention was to hopefully get in the house where we can get our stuff and just
have something that, you know that I could defend myself with if everybody
tried to rush us like they did the first time. 


The evidence was in conflict, and a rational jury could have concluded that appellant
intended a use of the object in which it was not capable of causing serious bodily injury or
death. 

 There was some evidence in the record that established the lesser included offense of
misdemeanor assault as "a valid, rational alternative to the charged offense." Arevalo v.
State, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997). Under the circumstances, appellant was
entitled to the jury instruction on misdemeanor assault. The State concedes this error
occurred. 

 The State also concedes the charge error was harmful. When error is preserved at
trial, the appellate court examines whether there was some harm to the defendant. Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on rehearing). Given that
the minimum punishment for the felony aggravated assault is greater than the maximum
possible punishment for misdemeanor assault, the error was harmful. 

 We sustain appellant's issue number one. We need not conduct a factual sufficiency
review, as appellant would be entitled to no greater relief. The judgment of the trial court
is reversed and the cause remanded to that court for further proceedings. 

 REVERSED AND REMANDED. 

 PER CURIAM


Submitted on February 6, 2004

Opinion Delivered February 18, 2004

Do Not Publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

1. At the time of the assault, appellant was 5' 11" and weighed 150 pounds while C.R.B.
was 6' 2" and weighed 280 pounds.
2. Appellant requested and the jury was instructed on deadly force in defense of person
under the provisions of Tex. Pen. Code Ann. § 9.32 (Vernon 2003).