

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0065-22, 066-22 & 067-22

### DONNELL SLEDGE, Appellant

### v.

### THE STATE OF TEXAS, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## DALLAS COUNTY

McClure, J., delivered the opinion of the Court in which Hervey, Richardson, Newell, and Walker, JJ., joined. Yeary, J. filed a dissenting opinion. Keller, P.J., Keel, and Slaughter, JJ., dissented without opinion.

## OPINION

When the trial court grants a motion for new trial based only on the bare recitation that "the verdict is contrary to the law and evidence," without more, may the accused be tried again for the same offense without violating principles of double

jeopardy? No. This case serves as a cautionary tale. Because the record is void of explanation for the trial court's decision to grant Appellant's motion for new trial and because our precedent is clear that the language "contrary to the law and evidence," without additional context, raises a legal sufficiency challenge, Appellant's second trial violated double jeopardy and acquittal is the required result.

Further, because Appellant was afforded more relief than he originally sought, we dismiss the State's second issue regarding ineffective assistance of counsel as improvidently granted. We reverse the judgment of the court of appeals and remand to the trial court for proceedings consistent with this opinion.

## BACKGROUND

On June 17, 2017, Appellant and about ten to fifteen others were playing dice near an apartment complex. At some point, an argument over the dice game arose between Appellant and one of the other participants, Demarcus Johnson. When the disagreement escalated to physical violence, Appellant retrieved a handgun and the group dispersed. Demarcus and his brother Drevonte ran to their grandmother's apartment and closed the door. Appellant, gun in hand, began searching for the two brothers in the apartment complex and another nearby complex. During this search, Appellant fired shots into the hallway, kicked in the screen door of a nearby resident, Rickey Pitts, and held a gun to his head. Appellant fled when he heard someone yell that the police were on the way.

Officers arrived and were interviewing Demarcus and Drevonte's grandmother, who reported the gunshots, when she spotted Appellant in his mother's car, driven by his girlfriend. Officers initiated a traffic stop, detained Appellant, and conducted a protective sweep of the vehicle. Officers thereupon discovered a plastic grocery bag containing small packages of heroin and cocaine and a handgun under the driver's seat.

Appellant was arrested and charged by indictment with the offenses of possession with intent to deliver four grams or more but less than 200 grams of heroin, possession with intent to deliver four grams or more but less than 200 grams of cocaine, and unlawful possession of a firearm by a felon. The State sought to enhance punishment with Appellant's criminal history as a habitual offender, and an allegation that Appellant used a deadly weapon in commission of the drug offenses. Appellant pled not guilty, but a jury convicted on all three charges. The same jury, however, found all enhancement paragraphs "not true." Because the enhancements were rejected, Appellant was sentenced to eleven years' confinement in each case. The trial court subsequently reformed the possession of a firearm by a felon charge to ten years, since the eleven-year sentence fell outside the applicable punishment range.[1]

---

[1] The jury charge inaccurately reflected the appropriate sentence range if the jury found Appellant guilty of the offense, but found "not true" on the enhancements. The form reflects the

Five days later, Appellant moved for a new trial in all three convictions, and the trial court's docket sheet indicates the State did not oppose the motions. If there was a corresponding hearing on the motion for new trial, it is not included in the record of the second trial. Neither party has provided a record of the first trial. The trial court granted Appellant's motion for new trial in all three cases. The motions summarily recite:

DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:
Now comes the Defendant in the above cause and by his Attorney, and moves the Court to grant him a New Trial herein for the good and sufficient reason that the verdict is contrary to the law and evidence.
Wherefore, Defendant prays the Court grant a new trial herein.

Respectfully submitted,

Attorney for Defendant

The orders for each of the three corresponding motions are mere invocations of the grounds alleged in the motion:

ORDER

The above Motion is hereby:

☑ (GRANTED)   ☐ (OVERRULLED)

JUDGE

MARTIN RICHTER
Senior Judge 5th Court of Appeals
Sitting by Assignment

---

applicable range as 5–99 years, while the sentencing range for a third-degree felony is 2–10 years.

Following the motions for new trial, Appellant's trial counsel made an oral motion to withdraw that was granted by the trial court. Appellant did not immediately appeal. The next day, new trial counsel was appointed. About three months later in October 2018, Appellant filed a motion to appear pro se, which was granted by the trial court. In December 2018, Appellant filed an untimely pro se notice of appeal in the Fifth Court of Appeals. The State never appealed the trial court's decision to grant Appellant's motions for new trial.

The Fifth Court of Appeals dismissed the appeal for want of jurisdiction, on grounds the granted motions for new trial restored the cases to their pretrial status. *Sledge v. State*, Nos. 05-19-00085-CR, 05-19-00086-CR, & 05-19-00087-CR, 2019 WL 457692, at *1 (Tex. App.—Dallas Feb. 6, 2019, no pet.) (mem. op., not designated for publication). Based on the appellate record in the Fifth Court of Appeals, it is unclear whether the record from the first trial was ever transcribed or requested by the parties.

In a pre-trial hearing in April 2019, Appellant was initially provided standby counsel, but requested the trial court appoint the standby counsel to represent him. It did so, and the case was continued to October 2019.

Throughout pre-trial matters, all parties appeared to agree that the State would try Appellant again. Appellant's counsel for the second trial made several comments referencing that impression including that the trial court was "going all the way back

to scratch,"[2] and was "back to square one."[3] At arraignment, however, defense counsel contradicted her earlier comments, defense counsel argued double jeopardy barred a second trial at Appellant's arraignment:

> Defense Counsel: Your Honor, my client would like to offer exhibit Defendant's Exhibit 1 after the trial that he was convicted in the previous trial [the] same day he was granted a motion for new trial. So while awaiting his trial he was sent to T.D.C. and given a T.D.C. number and actually went up for parole. So he's alleging basically that would be double jeopardy due to the fact he's already been to the pen, given a T.D.C. number and already gone before the parole board.[4]
>
> The Court: Counsel.
>
> The State: Your Honor, I obviously disagree with the argument. Based on the defendant's motion for new trial and the granting of it we're back at square one. There is no double jeopardy in this case.
>
> The Court: Yeah, I think it would be the same as if a man were convicted and sentenced and sentenced to the pen and went up on appeal. And on appeal they sent it back for new trial. It would not be double jeopardy, but if you have case law to look at certainly—
>
> Defense Counsel: I will. Thank you.

---

[2] "[S]ince we're going all the way back to scratch then I guess he can go ahead and file a Motion to Suppress based on other issues that were not addressed on with the first one."

[3] "We're back to square one. We would like to do a normal Motion to Suppress with the Officer."

[4] A motion for continuance filed by one of Appellant's appointed counsel for the interim period between the first and second trials recites "It was only after the undersigned had received and reviewed the foregoing, and attempted to discuss same with the Defendant, that it was discovered the Defendant had been inadvertently shipped to TDC. A bench warrant was immediately prepared and presented…and Appellant was returned to Dallas October 5, 2018."

If the double jeopardy objection arose again, it is not included in the record. In the second trial, Appellant was tried on the original drug offenses and the felon-in-possession charge. Also in this second trial, the State included an additional indictment for aggravated assault in connection with Appellant's conduct in holding a gun to the Rickey Pitts's head.[5] The State likewise sought to enhance the drug and felon-in-possession charges with the original enhancements from the first trial, despite the fact the first jury found each of them "not true." The jury ultimately acquitted on the new allegation of aggravated assault, convicted on all three original charges, and found all of the enhancement allegations to be true. As a result, the jury assessed punishment at twenty-eight years' confinement in each case, to run concurrently.[6]

## DIRECT APPEAL

In the Fifth Court of Appeals, Appellant presented four grounds for review: (1) trial counsel was ineffective for failing to object to the State's deadly weapon allegations and habitual offender enhancement paragraphs on grounds of collateral

---

[5] Although re-indicted before the second trial, the aggravated assault indictment was previously filed along with the original charges prior to the first trial. Those charges included aggravated assault of Demarcus Johnson, aggravated assault of Rickey Pitts, and possession of marijuana. Although arising out of the same transaction, these cases were not tried in the first trial and only the Pitts aggravated assault charge was re-indicted and tried in the second trial.

[6] Had the jury convicted on the additional charge of aggravated assault in the second trial, the State could have argued that the conviction for that charge could stand despite the motion for new trial. Because the jury acquitted on that charge, however, only the three original charges are before us.

estoppel when the jury from Appellant's first trial found them "not true;" (2) the trial court erred by submitting an instruction on the law of parties in the absence of evidence demonstrating Appellant's specific intent to promote or assist the commission of the drug offenses when he left the apartments; (3) court costs were improperly assessed in two of the three judgments and should be deleted; and (4) the judgments in each case incorrectly reflect Appellant's jail credits.

In response, the State argued that (1) the record was insufficient to show ineffective assistance of trial counsel and trial counsel was nevertheless not ineffective; and (2) the trial court did not err in its instruction on the law of parties and any error was harmless. It agreed that the judgments should be modified to delete erroneous court costs and correct jail time credit.

With respect to the first issue, both parties' arguments centered on Appellant's entitlement to collateral estoppel on the punishment enhancements. Responding to the parties' allegations, the court of appeals analyzed the applicability of collateral estoppel only in relationship to the punishment enhancements. *Sledge v. State*, 637 S.W.3d 770, 777–78 (Tex. App.—Dallas 2021), *reh'g denied*, 637 S.W.3d 967 (Tex. App.—Dallas 2022, pet. granted). It recognized that "there is no motion to set aside a verdict *favorable to the accused.*" *Id.* at 777 (citing U.S. CONST. amend. V; TEX. CODE CRIM. PROC. art. 45.040). It further found no "authority suggesting the defendant must forego favorable portions of a verdict as a condition of challenging

the balance of the verdict that was answered against him" or an indication that such was the intent of trial counsel since the motion was granted "without any specific grounds identified." *Id.* at 775, 777. Finally, the Fifth Court of Appeals found conclusive support for the contention that the State was precluded from relitigating the enhancement allegations. *Id.* at 776 (citing *Rollerson v. State*, 227 S.W.3d 718, 730 (Tex. Crim. App. 2007) for the premise that "the government may not litigate a specific elemental fact to a competent factfinder (judge or jury), receive an adverse finding, learn from its mistakes, hone its prosecutorial performance, and relitigate that same question of fact."). As a result of that conclusion and although the record was concededly silent as to trial counsel's justification for the failure to argue collateral estoppel, the court of appeals found trial counsel ineffective and remanded for a new hearing on punishment.[7] *Id.* at 779.

In response to the appellate court's decision to sustain Appellant's first issue regarding ineffective assistance, the State filed a motion for rehearing in which it noted, for the first time, that the motions for new trial granted in all three cases were not void of specific grounds as the court of appeals had recited, but were explicitly based on insufficiency of the evidence. It also noted that the State lost its opportunity

---

[7] As to the second issue, the appellate court found the jury instruction on the law of parties harmless. As to the third and fourth issues, it modified the judgment to delete court costs inappropriately assessed and reflect the correct jail credits.

to challenge the orders under the Texas Code of Criminal Procedure when it did not appeal and twenty-one days passed after the orders were entered. TEX. CODE. CRIM. P. 44.01(a)(3). In explaining its change of heart, the State explained:

> After this Court issued its opinion, undersigned counsel was assigned to the case for purposes of deciding whether or not to file a petition for discretionary review in the Court of Criminal Appeals. During that review, undersigned counsel and another colleague discovered that the new-trial motions and attached orders are in the transferred clerk's records, and that they state the grounds for the motions.[8] It appears that, because the motions were buried in the records from the original dismissed appeals, neither side saw them or realized their significance during original briefing.

The State went on to posit that, if the trial court intended to grant the motions on grounds of legal insufficiency, it was required to enter a judgment of acquittal. The State requested abatement in order to determine the basis on which the motions were granted. The court of appeals denied the State's motion for rehearing in a summary response which reiterated its grounds for granting a new punishment hearing, but it did not address the effect the "contrary to" language had on Appellant's right to avoid a subsequent trial for the same offenses in detail. The appellate court recited only that it is "obliged by the presumption of regularity to reject the notion that trial counsel entered into a secret agreement contrary to the

---

[8] The motions "state the grounds" in that they provide "the verdict is contrary to the law and evidence."

record and the premise of this appeal and failed to record it or disclose it to this Court." *Sledge*, 637 S.W.3d at 969.

## STATE'S PETITION AND APPELLANT'S RESPONSE

The State Prosecuting Attorney's Office petitioned this Court, requesting clarification on the effect of a motion for new trial granted on grounds that "the verdict is contrary to the law and evidence." The State concedes that this Court has explicitly held the contrary-to-law language translates to legal insufficiency as decided in *State v. Zalman*, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013). It also notes that such an interpretation of the contrary-to language would necessitate removal of the ground from Rule 21.3 of the Texas Rules of Appellate Procedure, which outlines the grounds for which a new trial must be granted. TEX. R. APP. P. 21.3(h). It further posits that the State could have appealed the ruling, but where it failed to do so and appreciating *Zalman* as precedential, "a motion with only these magic words requires Appellant and others like him to be acquitted."

The State would encourage a narrower application of *Zalman*, however, based on the use of contrary-to language as a "catch all" category and the unusual circumstances of this case which purportedly suggest the motion for new trial was granted on grounds other than legal insufficiency. The State's support for such an interpretation in this case lies in the fact the motion was neither opposed nor appealed by the State and that there is an absence of express reasoning in the record

for the decision to grant a new trial. The State argues that specificity in the ruling operated solely to the benefit of the State. As such, it could waive that benefit as it did here.

Appellant opposes the State's interpretation of the motions, but not the applicable law. He agrees that the interpretation of "contrary to the law and evidence" as constituting a legal sufficiency challenge is inapposite with Texas Rule of Appellate Procedure 21.3 permitting a new trial on those grounds. Because the motions and orders provided no more context than the bare recital, however, the default interpretation must be based on the plain language of the motions, not an imagined justification outside the record.

This case thus pivots on this Court's interpretation of silence and the bare language, "the verdict is contrary to the law and evidence."

## ANALYSIS

### Double Jeopardy

Because double jeopardy concerns affect fundamental, constitutional rights, they "may be raised for the first time on appeal, or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). Here, the issue was raised for the first time on appeal, and

the court of appeals addressed the effect of the motion for new trial on both the convictions and the enhancements. *Sledge v. State*, 637 S.W.3d at 776–78. On rehearing, the State attempted to correct the appellate court's misconception about the motions for new trial. The Fifth Court of Appeals then addressed the issue in its opinion on rehearing. Because the double jeopardy concerns were raised before the court of appeals, and the court of appeals addressed them in its decision, the issue is properly before us. TEX. R. APP. P. 66.1; *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) ("In our discretionary review capacity we review 'decisions' of the courts of appeals.") (quoting *Lee v. State*, 791 S.W.2d 141, 142 (Tex. Crim. App. 1990)).

Double jeopardy is a legal issue rooted in the Texas and federal constitutions. U.S. CONST. amend. V; TEX. CONST. art. I, § 14. Where a subsequent conviction has potentially violated double jeopardy and its resolution requires application of the law to facts not involving credibility and demeanor determinations, we review the issue de novo. *State v. Stevens*, 235 S.W.3d 736, 739–40 (Tex. Crim. App. 2007); *see United States v. Arreola-Ramos*, 60 F.3d 188, 191 (5th Cir. 1995).

Under principles of double jeopardy, no person may be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Fifth Amendment offers three distinct protections: "protection against a second prosecution for the same offense after acquittal;" "protection against a second

prosecution for the same offense after conviction;" and "protection against multiple punishments for the same offense." *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). Our review in this case concerns the first category, namely whether Appellant's first prosecution and conviction—which culminated in the trial court's decision to grant a boilerplate motion for new trial—constituted an acquittal such that Appellant's second prosecution for the same offenses violated the Fifth Amendment.

### *"The verdict is contrary to the law and evidence"*

Under Texas Rule of Appellate Procedure 21.3, "a defendant must be granted a new trial, or a new trial on punishment," for any of the eight listed reasons in that rule, including (h), "when the verdict is contrary to the law and the evidence." TEX. R. APP. P. 21.3(h). This provision, standing alone, "raise[s] a sufficiency challenge and *only* a sufficiency challenge." *Zalman*, 400 S.W.3d at 594 (citing *Bogan v. State*, 180 S.W. 247, 248 (Tex. Crim. App. 1915)) (grounds the verdict is contrary to the law and evidence "raise the issue of the sufficiency to sustain the verdict."). In *Zalman*, we found that such a recital was insufficient to put the State on notice of additional claims, such as evidentiary issues under the Fourth Amendment. *Id.* We also noted that the contrary-to language was insufficient to give the trial court notice of Zalman's claims. *Id.* (quoting *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993)). In fact, we sought to emphasize the importance of specificity in a

motion for new trial by reiterating that specificity is an "essential element." *Id.* Citing our decision in *Gonzalez*, we made clear that the "wisdom of [requiring a motion for new trial to be specific] lies in the fact that reasonable notice should be given not only to the trial court but the State, as well, as to the misconduct relied upon and to prevent a purely fishing expedition on the part of the accused." *Id.* We would add that, as illustrated here, specificity also operates to the benefit of the parties before a reviewing court. *Gonzalez*, 855 S.W.2d at 695 (commenting on the purpose of former Texas Rule of Appellate Procedure 31(d)) ("The hearing requirement provides either party an opportunity to develop a record for appellate review, should either party elect to appeal the decision on the motion for new trial.").

Pertinent caselaw has recognized the requirement of specificity and the construction of the contrary-to language in relationship to an appellant's assertion of issues other than sufficiency where that issue was the sole complaint in the motion for new trial. *See generally Zalman*, 400 S.W.3d at 590 (motion for new trial alleging the verdict was contrary to the law and evidence was insufficient to raise evidentiary suppression issues). This case, however, presents the novel issue of whether a motion for new trial granted on explicit sufficiency grounds, operates to preclude a second trial on the same offenses. The State asks this Court to employ a double standard and hold that, where an appellant complains the verdict is contrary to the law and evidence, he is confined to litigating *only* sufficiency on appeal, but

otherwise where the order granting a new trial is not appealed and an appellant is tried a second time, we may imply an alternate meaning in the motions and corresponding orders. We refuse to subscribe to this reasoning.

Here, Appellant submitted three motions for new trial as to each of his convictions on grounds "the verdict is contrary to the law and evidence." The State was unopposed to the motions. It is unclear from the record whether a hearing was held. If there was a hearing, it is not included in the record. The orders signed in each cause likewise obscure any alternate meaning which the State suggests existed at the time the motions were granted. The State provides no evidence to that effect. As a result, we cannot infer any alternate meaning as to the motions for new trial, and the trial court's decision to summarily grant them. While we find it strange that the State was unopposed to Appellant's motions and subsequently did not appeal the trial court's decision to grant them, those facts alone do not sufficiently alert us to any specific, alternate meaning behind the trial court's decision to grant the motions. If, as the State suggests, this Court could imply an alternate meaning whether based on evidence recited in the motion, the arguments presented at the hearing, or the trial court's oral justifications for its decision to grant the motions, we certainly cannot do so where the record is silent, or worse yet, absent.[9]

---

[9] Some courts have been willing to imply alternate meanings where the record reflects another, specific ground for the motion for new trial. *See e.g. State v. Hinojosa*, No. 13-13-

We share the State's concern that, if the contrary-to language is listed in Texas Rule of Appellate Procedure 21.3 as a ground for a motion for new trial, it logically would contain some meaning other than legal insufficiency. Indeed, we have so held. *See Ortega v. State*, 668 S.W.2d 701, 707 (Tex. Crim. App. 1983) (op. on reh'g), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) (finding that the fact the instruction varied from the proof, making the guilty verdict "contrary to the law and evidence," and acquitting as a result); *see also Idrogo v. State*, 589 S.W.2d 433, 434 (Tex. Crim. App. 1979) (finding the verdict was contrary to the law where the jury convicted on an offense not submitted to them in the jury instructions).

Again, we would stress that no such alternate meaning has been presented to this Court. We cannot imply such meaning by the parties' false impression that the orders "reset" the trial, rather than require acquittal. Moreover, we have held that Rule 21.3's grounds for rehearing are not exhaustive. *State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007). If the motion sought to allege an error omitted from Rule 21.3, it could have done so. *Id.* That fact also makes the State's allegation that

---

00419-CR, 2015 WL 1957092 (Tex. App.—Corpus Christi-Edinburg Apr. 30, 2015, no pet.) (contrasting *State v. Mercier*, 164 S.W.3d 799 (Tex. App—Corpus Christi-Edinburg 2005, pet. ref'd) with *Hinojosa* where the appellee alleged "contrary to" language in the motion for new trial, but specifically argued Fourth Amendment issues).

Rule 21.3(h) may function as a catch-all phrase unlikely, especially when unaccompanied by a record demonstrating the alternate meaning.

The State could have prevented acquittal in this case only by appealing the motion for new trial. It did not. The propriety of the motion for new trial is not before this Court. If the State sought to argue that ground (h)'s "contrary to" language, without more, is too vague to preserve *any* issue on appeal, it could have appealed the trial court's order granting the motions for new trial. TEX. CODE. CRIM. PROC. art. 44.01(a)(3). Likewise, if the State sought to allege Appellant failed to produce sufficient evidence to support the motion for new trial under *Herndon*, it could have appealed the order and provided the record for a reviewing court to conduct a sufficiency review. *State v. Herndon*, 215 S.W.3d at 909 ("[A] trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure."). Allowing the State to litigate the legitimacy of the motion for new trial where it has otherwise sat on its rights, would improperly provide it a second opportunity not permitted in the Rules of Appellate Procedure. As a result, we stress that our opinion should not be construed to endorse vague motions for new trial, especially when unaccompanied by a corresponding hearing.

### The Motion's Effect

Because our caselaw finds that a bare recital that "the verdict is contrary to the law and evidence" constitutes a legal sufficiency challenge and *only* a sufficiency challenge, we must next ask what effect the trial court's decision to grant the motion had on Appellant's convictions. *Zalman*, 400 S.W.3d at 594. When a trial or appellate court determines that the evidence is insufficient to support the verdict, the defendant or appellant must be acquitted. *Hudson v. Louisiana*, 450 U.S. 40, 43, 101 S. Ct. 970, 972 (1981) (citing *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 2150 (1978)). Likewise, the fact a defendant sought a new trial as his remedy does not alter this holding. *Id.* (citing *Burks*, 437 U.S. at 17). In mandating such a result, the Supreme Court has reasoned:

> In holding the evidence insufficient to sustain guilt, a[]. . .court determines that the prosecution has failed to prove guilt beyond a reasonable doubt. . . to permit a second trial in which the prosecution would be afforded another opportunity to supply evidence that it failed to muster in the first trial.

*Burks*, 437 U.S. at 2. As we stated above, the trial court's reasoning for granting a second trial is unknown. The record, motion, and order are altogether void of explanation. As a result, we must assume that the plain language used in the motion for new trial reflects the intention of the trial court, despite the perplexing reactions of the parties, including the State's acquiescence in the motion, subsequent failure to appeal, and both parties' false impressions that Appellant could be tried

again for the same offenses. Giving effect to the language at issue, a second prosecution would violate principles of double jeopardy.

## CONCLUSION

As we stressed at the outset and stress again here, where the parties plan to agree to a motion for new trial, especially without the benefit of a hearing, it would behoove both litigants and the trial court to inspect the contents of the motion. *Caveat emptor*: let the buyer beware.

Because we cannot address any alternate intention of the parties on such an absent record, the plain language of the motion raises a sufficiency challenge. The Supreme Court of the United States has been clear that findings as to legal sufficiency in favor of the accused constitute acquittal, thus the Fifth Amendment precludes a second trial. Importantly, this opinion does not stand for the proposition that the language "the verdict is contrary to the law and evidence" always raises a legal sufficiency challenge. Rather, we merely hold that a contrary interpretation cannot be reached beyond the confines of an absent record. Further, the propriety of such a vague motion for new trial and corresponding order cannot be addressed beyond the State's opportunity to appeal it. TEX. CODE. CRIM. PROC. art. 44.01(a)(3).

We reverse the judgment of the court of appeals and remand the causes to the trial court for proceedings consistent with this opinion.

Delivered: March 8, 2023

Publish