Filed 5/8/25  In re Luis G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re LUIS G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>             v.<br><br>LUIS G.,<br><br>    Defendant and Appellant. | G063163<br><br>(Super. Ct. No. 21DL0480)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Douglas Hatchimonji, Judge. Reversed and remanded as directed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A.

Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

* * *

Appellant Luis G. (Luis) appeals from the juvenile court's order sustaining a petition for active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)).[1] Luis contends, among other things, that the finding of active participation in a criminal street gang should be reversed because there was insufficient evidence that the predicate crimes established an organizational nexus between the predicate offenses and the gang as a collective enterprise.

This collective engagement requirement was first articulated in *People v. Clark* (2024) 15 Cal.5th 743 (*Clark*). Because the court reached its decision in 2023, prior to the California Supreme Court's decision in *Clark*, we conclude reversal and remand as directed on this count is appropriate.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the early morning hours of July 4, 2021, Luis[2] and Tomas Pantaleon were standing outside the front doors of a 7-Eleven in Santa Ana.[3] The store was in an area known as Krazy Proud Criminals (KPC) territory.

Victor C. tried to enter the store. Either Luis or Tomas said, "'Oh, I recognize him,'" referring to Victor C., who had never seen either of them

---

[1] Subsequent statutory references are to the Penal Code.

[2] Luis was later identified from a surveillance video by a detective who had prior contacts with him.

[3] The court found the counts based on this incident not true as to Luis. We provide this summary by way of background.

2

before. Tomas and Luis attacked Victor C., and he suffered multiple stab wounds. Tomas and Luis left the scene in a white SUV.

Victor C. was hospitalized for about a month. At the time of the incident, he wore a Detroit Tigers baseball cap. According to him, the letter "D" on the cap represented not only the baseball team, but Delhi, the neighborhood where he was raised. Delhi was also a street gang with which he had been affiliated, but he denied active gang membership at the time of the incident. He did not recall Tomas or Luis asking where he was from prior to attacking him.

Detective Zachary Jezulin of the Santa Ana Police Department testified as the gang expert in this matter, and he also assisted in the investigation of the incident. He helped execute a search warrant at Tomas's residence, which located two knives. A white Yukon SUV was parked at Tomas's residence. During Tomas's arrest, Jezulin noted KPC-related tattoos on Tomas's back and torso. Tomas later pleaded guilty to attempted murder, assault with a deadly weapon, and the substantive gang offense, as well as associated enhancements, all of which pertained to the attack on Victor C.

Luis was arrested for the stabbing of Victor C. in July 2021. After the arrest, at juvenile hall, Detective Jezulin pulled up Luis's shirt and observed a large tattoo of the Roman numeral XV (15) on his abdomen. Luis had a prior juvenile court history and was believed to be a member of KPC.

A petition was filed in July 2021 in connection with the stabbing of Victor C. Luis was charged with attempted murder (Pen. Code, §§ 664/187, subd. (a), count one), assault with a deadly weapon (§ 245, subd. (a)(1), count two), and active participation in a criminal street gang (§ 186.22, subd. (a), count three). The petition also alleged, as to counts one and two, personal

infliction of great bodily injury enhancements (§ 12022.7, subd. (a)), and a gang enhancement. (§ 186.22, subd. (b)(1).)

Detective Jezulin testified at the adjudication hearing as a gang expert. He had been a police officer for six years at the time of his testimony in November 2023. He had been a gang detective since 2021 and had previously worked in the patrol division.

Among other things, Detective Jezulin testified about his training and experience, gang tattoos, the "work" gang members were expected to perform, gang monikers or nicknames, gang territory, the importance of respect and reputation in gang culture, gang rules and the consequences for breaking them, and the commission of crimes for the gang's benefit.

In addition to these other topics, Detective Jezulin testified about predicate gang offenses. In 2017, Christopher Romero pleaded guilty to robbery and a gang enhancement. Romero, who had several KPC tattoos, admitted to unlawfully taking personal property (an iPad and two notebooks) from the victim "for the benefit of the Krazy Proud Criminals, a criminal street gang." The robbery took place within KPC territory. Jezulin testified that in his opinion, the crime was committed for the benefit of KPC. The benefit "[c]ould be monetary value, money, items that were taken, they could be sold or traded, whether for narcotics, for sales or for money itself, and used to benefit the gang." His opinion was based on conversations he had with members of gangs in Santa Ana. Robberies, he testified, were a common means of obtaining funds for other criminal activities.

In 2019, Bryan Garcia was arrested for the stabbing of a male victim in his 20's. Detective Jezulin stated the location of the stabbing was within KPC territory. Jezulin had prior contacts with Garcia, during which Garcia always wore KPC colors. Garcia was accompanied by other individuals

4

in similar clothing. In 2021, Garcia was convicted of attempted murder and related charges for the 2019 stabbing incident, including a gang enhancement, pursuant to a plea bargain. Jezulin opined Garcia's acts were for the benefit of KPC, because the victim was a perceived rival in KPC territory, and the crime built KPC's reputation and protected its territory from rivals.

At the conclusion of Luis's contested jurisdictional hearing, which ended in July 2023, the court found counts one and two not true. It found the gang count alleged in count three true. While the court found that whoever stabbed Victor C. had committed implied malice attempted murder, and the video recordings suggested it might have been Luis, the court could not find that he had personally stabbed the victim beyond a reasonable doubt. As to aiding and abetting, the evidence was insufficient to find Luis had the reckless knowledge that Tomas, if he was the offender, was armed with a deadly weapon. The court did find, however, the necessary elements of section 186.22, subdivision (a), were true.

At the disposition hearing, Luis was ordered a continuing ward of the court. The court committed Luis to juvenile hall for 730 days, with credit for 743 days already served. The court also imposed probation terms and conditions. Luis now appeals.

DISCUSSION

Luis argues, among other things, that the true finding on count three, active participation in a street gang (§ 186.22, subd. (a) [the substantive gang offense]), must be reversed because there was insufficient evidence that KPC gang members collectively engaged in a pattern of criminal activity.

5

# I.

## RELEVANT STATUTORY FRAMEWORK

Under the substantive gang offense, "A person who actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in felonious criminal conduct by members of that gang . . . ." is subject to a term of imprisonment. (§ 186.22, subd. (a).) "Criminal street gang" is defined as "an ongoing, organized association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e), having a common name or common identifying sign or symbol, and whose members *collectively engage* in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.)

The crimes enumerated in section 186.22, subdivision (e) include assault, robbery, controlled substance offenses, and weapons offenses, among others. To establish the requisite "'pattern of criminal gang activity'" required by the substantive gang offense, the prosecution must establish "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of, two or more of the [enumerated] offenses" within a specific time frame, as well as proving "the offenses were committed on separate occasions or by two or more members, the offenses commonly benefited a criminal street gang, and the common

benefit from the offenses is more than reputational."[4] (§ 186.22, subd. (e)(1); see *People v. Tran* (2022) 13 Cal.5th 1169, 1206.)

## II

### COLLECTIVE ENGAGEMENT IN PREDICATE OFFENSES

Under section 186.22, subdivision (f) "collective engagement requires a nexus between the individual predicate offenses and the gang as an organized, collective enterprise. This organizational nexus requirement is satisfied by showing a connection between the predicate offenses and the organizational structure, primary activities, or common goals and principles of the gang." (*Clark, supra,* 15 Cal.5th at p. 749.) There must be "a connection, or nexus, between an offense committed by one or more gang members and the organization as a whole." (*Id.* at p. 762.) But courts should not "overstate the degree of formality required[,]" recognizing that some gangs are loosely structured "while others are 'highly ordered and disciplined' with a 'well-defined' hierarchy," and that "some gangs may have loosely defined goals and principles while others may have clearly defined missions." (*Ibid.*) "Given this variability," the *Clark* court acknowledged that collective engagement could be "established in different ways." (*Ibid.*) Collective engagement "is conceptually distinct from the requirement to prove that each predicate offense 'commonly benefited' the gang [citation], even though the

---

[4] Some of these requirements are fairly recent.  Section 186.22 was originally adopted in 1988 as part of the California Street Terrorism Enforcement and Prevention Act (§ 186.20 et seq.), also known as the STEP Act. (See Stats. 1988, ch. 1256, § 1, pp. 4178–4179.) "The Legislature substantially amended the STEP Act in Assembly Bill 333, also known as the STEP Forward Act of 2021. (Stats. 2021, ch. 699, § 1.)" (*Clark, supra,* 15 Cal.5th at p. 752.)

facts necessary to prove the two requirements will often overlap with one another." (*Id.* at p. 763.)

Examples of collective engagement include "evidence of a direct order from the gang to commit specific crimes. [Citations.] Alternatively, evidence might show a more general, well-understood expectation that members must engage in certain types of offenses. (E.g., *People v. Elizalde* (2015) 61 Cal.4th 523, 528 . . . [junior members received a general order to attack rivals to support the gang and earn their status].) In other cases, collective engagement might be shown by demonstrating that the offenses are reflective of the primary activities of the gang, or else adhere to a common goal or plan characteristic of the gang in question. (E.g., *People v. Johnson*, [(2013)] 57 Cal.4th [250,] 256 [members played different roles in carrying out the gang's activities, either selling drugs, patrolling the gang's territory, or killing rivals]; *People v. Chhoun* (2021) 11 Cal.5th 1, 16 . . . [a gang's complex robberies followed a common plan of targeting similar victims and relying on members to play specific roles].)" (*Clark, supra,* 15 Cal.5th at p. 762.)

Luis argues that the prosecution failed to establish sufficient evidence of a link between the crimes and the gang organization as a whole. But we do not see this as a question of sufficient evidence. The law on collective engagement has been substantially clarified and altered by the California Supreme Court's opinion in *Clark*, and now requires a finding of "an organizational nexus between the crime and the gang" that had not previously been articulated. (*Clark, supra,* 15 Cal.5th at p. 763.) The court and parties had no reason to believe that such a requirement existed at the time of the adjudication hearing. Consequently, the question of whether an organizational nexus existed between the predicate offenses and the KPC

gang "was not relevant at the time of trial and the issue was therefore never tried." (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 72, fn. 2.)

If this had been a jury trial, we would call this instructional error. We find the same standard applies here, because the court, acting as the trier or fact, considered the wrong elements on collective engagement. Because *Clark* fundamentally altered the evidentiary showing necessary to establish the element of collective engagement after Luis's adjudication hearing, we cannot conclude the error was harmless beyond a reasonable doubt. (*People v. Wilkins* (2013) 56 Cal.4th 333, 348.) Because this is a reversal for an error of law, double jeopardy does not bar retrial on this count. (*Burks v. United States* (1978) 437 U.S. 1, 16–18.) Accordingly, we reverse and remand for further proceedings consistent with the law as set forth in *Clark.*

Because we reverse on this basis, we need not consider Luis's remaining argument.

## DISPOSITION

The true finding on count three is reversed, and the matter is remanded for further proceedings as directed.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.

9